MINE CREEK CONTRACTORS, INC. and R & E Excavating Co., Inc. *v.* Carl GRANDSTAFF and Darlene Grandstaff, Husband and Wife

89-161                                                    780 S.W.2d 543

Supreme Court of Arkansas
Opinion delivered December 4, 1989

518

*Everett & Gladwin*, by: *John C. Everett*, for appellant.

*Jack Skinner*, for appellee.

STEELE HAYS, Justice. This case involves a damage suit for negligent construction which was won by appellees, the plaintiffs below. Appellants appeal on four points, none of which have merit.

Appellees, Carl and Darlene Grandstaff, own a gas station in Greenwood, Arkansas, located on a route designated for construction by the Arkansas Highway Department. Appellants, Mine Creek Contractors, Inc. and R & E Excavating Co., Inc., contracted with the state to repair a bridge to the east of appellees' station, and to perform certain work on Center Street in front of appellees' station. The bridge work began in March 1986 and was completed in June 1986. Work was then begun on Center Street and was completed around the end of August.

From the time the work on the bridge was started until the completion of the work on Center Street, traffic was detoured around appellees' gas station. While the bridge work was being done, appellees' customers had reasonable access to the station, except for the general detour. Once the Center Street construction began, however, appellees complained of interference with access to their station, that it was either entirely blocked off, or rendered so difficult that access was virtually nonexistent.

Appellees filed this suit against appellants claiming tortious interference with business relations, trespass, and negligent construction. The court directed a verdict on the claims of interference with business relations and trespass, but allowed the negligent construction claim to go to the jury. The appellees originally asserted $450,000 in lost past and future profits, but as of closing arguments, requested between $300,000 and $380,000, depending on how the jury chose to interpret the evidence. The jury returned a verdict for appellees and awarded $87,000.

Appellants first argue that the trial court erred in denying their motion for a directed verdict because the appellees failed to provide the jury with the applicable standard of care, and because there was no substantial evidence to support the jury verdict on the charge of negligence.

Appellants correctly state the law that when damages are suffered as a result of the performance of a construction contract for the state or a political subdivision, and the damages result from something inherent in the design and specifications of the contract required by the public agency, the contractor is not liable unless he is negligent or guilty of a wrongful tort. *Guerin Construction, Inc.* v. *Reaves*, 270 Ark. 710, 606 S.W.2d 143 (1980). Appellants then argue that appellees suffered no damage beyond the damage resulting simply by the performance of the contract, and that if any damage did occur from negligently performing the contract, appellees failed to produce any expert testimony to show the standard of care in the industry.

We will not reach this argument for not only did appellants fail to raise it below, they conceded the adequacy of the appellees' proof. The following was stated at the close of the plaintiffs' case:

Appellants' Counsel: Your Honor, I will move the Court to instruct a verdict in favor of the defendants on the plaintiffs' theory of trespass because of the doctrine and the plaintiffs' tortious contractual relations. I make that motion only on the merits of the case presumed by the plaintiff, not including the prayer for damage. *To be honest with the Court, I think they've made a case on negligent construction except for damage. . . .*

A motion for a directed verdict must state the specific grounds. ARCP Rule 50(a). Failure to state the specific grounds of a motion or objection below constitutes a waiver of that argument on appeal. *Bond* v. *State*, 296 Ark. 1, 751 S.W.2d 339 (1988). Nor can grounds for an objection be changed on appeal. *Hart* v. *State*, 296 Ark. 290, 756 S.W.2d 451 (1988). Of course, conceding a point before the trial court precludes a claim of error on appeal.

It might be noted that this point is without merit in any case. The problem appellees complained of was the failure to provide adequate access, which failure was: 1) not in compliance with the requirements of the appellants' contract with the state, 2) something that was easily within the jury's common knowledge and did not require expert testimony, and 3) there was proof that appellants failed to provide access as was required by their contract with the state.

Appellants next argue that the trial court erred in denying the appellants' motion for a directed verdict on grounds the appellees failed to supply any proof to remove the question of the proximate cause of the alleged damages from the realm of speculation. Appellants point out that some of appellees' loss was admittedly due to the detour of cars from directly in front of their gas station as well as to appellants' failure to provide access points for the gas station. Appellants then frame their argument as one of proximate cause, arguing that appellees have failed to show that the damage they suffered was proximately caused by the lack of access and not by the detour and construction itself and that the jury was left to speculate as to what portion of the damage, if any, was caused by appellants' negligence.

First, we note there was evidence from which the jury could conclude that a portion of the damage was attributable to the lack

of access and not merely the rerouting of traffic. Appellee, Carl Grandstaff testified to this, as did customers who tried to continue to use the gas station after the road construction began, but found that access was difficult or impossible.[1] And while appellees admitted that some of their loss was due simply to the detour, they emphasized they could abide those losses, but it was during times when there was no access at all to the station, or when access was made nearly impossible that their business was most hampered.

When there is damage proximately caused from two sources, the question is not one of proximate cause but apportionment of damages. This problem is addressed by Prosser:

> Once it is determined that the defendant's conduct has been a cause of some damage suffered by the plaintiff, a further question may arise as to the portion of the total damage sustained which may properly be assigned to the defendant, as distinguished from other causes. The question is primarily not one of the fact of causation, but of the feasibility and practical convenience of splitting up the total harm into separate parts which may be attributed to each of two or more causes.

*Prosser and Keeton on Torts* (5th ed. 1984) § 52, p. 245.

This section in Prosser discusses situations similar to the one before us, where for example, two defendants have polluted a stream with oil, or where trespassing cattle or marauding dogs belonging to several defendants have caused damage. In short, this section notes that the more difficult the apportionment is, the more relaxed the standards of proof will be, and in some cases which the courts found incapable of any definite and satisfactory proof, the jury was allowed to estimate. *Id.* p. 348. Prosser concludes with the following:

> The courts quite reasonably have been very liberal in permitting the jury to award damages where the uncertainty as to their extent arises from the nature of the wrong itself, for which the defendant and not the plaintiff, is

---

[1] One customer, for example, testified that to gain access to the station he had to cross over an old church parking lot which had dirt piled up on it and in attempting to cross it to reach the station the tailpipe on his car was knocked loose.

responsible. The requirements of proof usually have been somewhat relaxed in such cases, and it has been said that no exact evidence will be required, and that general evidence as to the proportion in which the causes contributed to the result will be sufficient to support a verdict. *Cases are few in which recovery has actually been denied for lack of such proof. Id.* at 350.

■ While we have no cases discussing this exact point, we do have two rules on damages which are in harmony with that tenet. The first states that the plaintiff must present proof that would enable the jury to fix damages in dollars and cents, *Milligan* v. *General Oil Co.*, 293 Ark. 401, 738 S.W.2d 404 (1987), and damages will not be allowed which are speculative, resting only upon conjectural evidence or the opinion of the parties. *Wasp Oil, Inc.* v. *Arkansas Oil & Gas, Inc.*, 280 Ark. 420, 658 S.W.2d 397 (1983). But, in those instances where damages simply cannot be proven with exactness, when the cause and existence of damages have been established by the evidence, recovery will not be denied merely because the damages cannot be determined with exactness. *Id. Crow* v. *Russell*, 226 Ark. 121, 289 S.W.2d 195 (1956).

In this case, there was no question but that appellees gave damages in exact figures of dollars and cents. What is lacking is definite proof as to the apportionment of the damages between the state's construction project and appellants' negligent construction in the failure to provide access to appellees.

Here, the damages are difficult to apportion because of the nature of the damages and of appellees' claim. The detour around the gas station started in March and continued until construction was completed at the end of the summer. Appellees' claim for damages covered the time from the beginning to the end of the detour, as well as that coinciding period of time when access was lacking, for a total of $300,000—$380,000 depending on how the jury chose to evaluate the evidence.

Clearly the appellees were not entitled to recover from appellants the loss suffered from the detour itself, but we agree with the trial court that the jury had before it sufficient evidence from appellees' accountant on which to base damages attributable only to appellants.

■ The appellees presented monthly sales and profit figures to the jury from the year prior to the construction as well as the year in question. It was an easy enough task for the jury to leave out the losses for the first months when only the detour was in effect, and to then use those months as a basis for determining the increased loss during the months when access was denied. These calculations would result in a reasonably accurate estimate of the losses claimed by appellees that were attributable to appellants' conduct. The jury evidently took this all into consideration as they did not award the $300,000—$380,000 requested by appellees, but only a lesser portion of that amount, $87,000. · Under the circumstances of this case, we find the evidence was sufficient to prove damages and the trial court did not err by allowing the case to go to the jury.

Appellants also maintain the trial court erred in denying the appellants' motion for a directed verdict where the appellees failed to produce a reasonably complete set of figures and that the proof was insufficient to remove the question of anticipated profits from the realm of speculation. The appellants point to a number of things which they find deficient such as the lack of a balance sheet, failure to show that some losses were arguably from changed business practices and not lost profits, and so on.

■ We will not address this argument however as it was not raised below. The only argument we find specifically addressed to the trial court on damages, was the question previously discussed on apportionment of damages. ARCP Rule 50(a) requires that a motion for a directed verdict "shall state the specific grounds therefor." We find no discussion or mention in the record below of this point now raised on appeal. And even if it were to be argued that this objection should be read into the other argument made below, the question was never addressed or ruled on by the trial court, which confined its ruling on the damage issue to that of the question of apportionment of damages between appellants and the state. The burden to obtain a ruling is on the movant, and questions left unresolved are waived and may not be relied upon on appeal. *Britton* v. *Floyd*, 293 Ark. 397, 738 S.W.2d 408 (1987).

As their last point, appellants contend the trial court erred in admitting testimony of appellees' expert witness, Dale Leslie, on

his opinion as to the value of appellees' business. Appellees' accountant, Dale Leslie, testified as an expert witness on financial matters regarding appellees' business operations and their financial records, including calculations showing appellants past and future profits and lost profits. When Leslie attempted to give his opinion on the value of appellees' business, appellants objected that while he was qualified to testify to accounting matters, he was not qualified to testify as to the value of a business.

We first note that Leslie's testimony as to the value of the business before and after the construction, was not critical nor was it relied on in appellees' request for damages. Their damages were based on lost and future profits, and the figure Leslie gave for the decrease in value of the business was used only to give some added support in the manner of corroboration for the lost profit figure requested by appellant. So even if it had been error to admit the evidence, it could have only been minimally harmful at best, as it was essentially cumulative, and we will only find error on the admission of evidence if it affects a substantial right of a party. A.R.E. Rule 103. There was no such substantial right affected in this case and on that basis alone we find no error.

But neither do we find error in admitting Leslie's testimony. Whether a witness may give expert testimony rests largely within the sound discretion of the trial court and that decision will not be reversed unless an abuse of that discretion is found. *Dildine* v. *Clark Equipment Co.*, 282 Ark. 130, 666 S.W.2d 692 (1984). Generally, the tendency is to permit the jury to hear the testimony of the person having superior knowledge in a given field unless clearly lacking in either training or experience, and too rigid a standard should be avoided. If some reasonable basis exists from which it can be said the witness has knowledge of the subject beyond that of persons of ordinary knowledge, his evidence is admissible. *Id.*

Here, Leslie had been a public accountant for twenty-nine years and lived in the area for thirty years. He had been appellees' accountant for twenty years, and had been licensed by the state as a public accountant for ten or fifteen years. As to business valuations, Leslie had experience as part of his practice in determining the fair market value of clients' businesses for purposes of buying or selling those businesses. This included

determining the fair market value of small enterprises such as appellees'. Leslie also stated he had personal knowledge of what buyers and sellers of single owner businesses in the area looked at in determining the value of a business.

While the witness may not have had an excess of technical training, he appeared to have considerable practical experience, doing locally for many years, what he did for appellee in this case. It was stated in *Dildine*, that a witness may be qualified by professional, scientific, or technical training, or "by *practical experience* in some field of activity conferring on him special knowledge not shared by other people in general, the rule in this respect being that one who had been engaged for a reasonable time in a particular profession, trade or calling, will be assumed to have the ordinary knowledge common to persons so engaged."

We find the witness's experience in this field was sufficient to qualify as an expert on the matter testified to and we find no abuse of discretion.

For the reasons stated the judgment is affirmed.