Carol J. HODGES *v.* Governor Mike HUCKABEE and
Kurt Knickrehm, Director of the Arkansas Department of
Human Services, Appellees; Dr. Curtis Stover and
Little Rock Family Planning Services, Intervenors

99-295                                        995 S.W.2d 341

Supreme Court of Arkansas
Opinion delivered July 15, 1999

[Petition for rehearing denied September 9, 1999.*]

---

\* IMBER and SMITH, JJ., not participating.

*J. Fred Hart Jr.*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Tim Humphries*, Senior Ass't Att'y Gen.; and *Breck G. Hopkins*, Office of Chief Counsel, for appellees.

*Wright, Lindsey & Jennings*, by: *Bettina E. Brownstein*; and *The Center for Reproductive Law & Policy*, by: *Priscilla J. Smith*, for inter-venor-appellees.

RAY THORNTON, Justice. Appellant Carol J. Hodges appeals the decision of the Pulaski County Chancery Court granting appellees their motion for summary judgment and declining to enter an injunction directing the removal of the State of Arkansas from the federal and state Medicaid program. Federal law, including the Hyde Amendment,[1] prohibits the use of public Medicaid funds for abortions except where necessary to save the life of the mother, or in cases of rape or incest, while Amendment 68 to the Arkansas Constitution prohibits the use of public funds except to save the mother's life. This is the second time these

---

[1] The 1994 Hyde Amendment, named for its sponsor, Representative Henry Hyde of Illinois, was enacted as § 509 of the Department of Labor Appropriations Act, 1994, 107 Stat. 1082. In its entirety, the amendment provides that "[n]one of the funds appropriated under this Act shall be expended for any abortion except when it is made known to the Federal entity or official to which funds are appropriated under this Act that such procedure is necessary to save the life of the mother or that the pregnancy is the result of an act of rape or incest." 107 Stat. 1113.

issues have been presented to us,[2] and some issues have been resolved by the federal judiciary, including a decision by the United States Supreme Court. Because we find that the trial court did not err in its decision granting summary judgment and declining to order the removal of Arkansas from the Medicaid program, we affirm.

On July 25, 1994, the United States District Court for the Eastern District of Arkansas held that under the Supremacy Clause, the Hyde Amendment preempted Amendment 68. *Little Rock Family Planning Servs., P.A. v. Dalton*, 860 F. Supp. 609 (E.D. Ark. 1994). The district court reasoned that it was powerless to rewrite Amendment 68, and thus concluded that "the Amendment must be stricken in its entirety, to enable the people or their elected representatives to decide how Arkansas will cover abortion in the state Medicaid program so that it will not conflict with federal law." *Id*. The district court enjoined the enforcement of Amendment 68 in its entirety for so long as the state accepted federal funds pursuant to the Medicaid Act.

Appellant brought an illegal-exaction suit in Pulaski County Chancery Court against then governor Jim Guy Tucker and Tom Dalton, who was then director of the Arkansas Department of Human Services,[3] alleging that by virtue of the district court's order in *Little Rock Family Planning Services v. Dalton*, the State was compelled to spend state funds for abortions other than for the purpose of saving the life of the mother for Medicaid-eligible recipients, in contravention of Amendment 68. She further prayed for a mandatory injunction directing appellees to terminate the state's participation in the Medicaid program. In the meantime the district court's decision in *Little Rock Family Plan-*

---

[2] A previous appeal in this case, *Hodges v. Huckabee*, 333 Ark. 247, 968 S.W.2d 619 (1998), was dismissed by this court for lack of subject-matter jurisdiction, as the lower court's order failed to address the claims against separate defendant Governor Mike Huckabee and thus was not a final, appealable order. *Id*.

[3] The Pulaski County Chancery Court on its own motion and in recognition of the fact that both Jim Guy Tucker and Tom Dalton were sued solely in their official capacities as Governor and Director of the Department of Human Services, respectively, substituted Mike Huckabee as defendant in his official capacity as Governor. Kurt Knickrehm has since replaced Dalton as director of DHS.

*ning Services* was appealed to the Eighth Circuit and then the United States Supreme Court. By the agreement of the parties in this case, no further action was taken on the pending motions before the final disposition of the federal suit. Dr. Curtis Stover and Little Rock Family Planning Services, P.A., the plaintiffs in the corresponding federal suit, were granted their motion to intervene in this action.

On July 25, 1995, the Court of Appeals for the Eighth Circuit affirmed the district court. *Little Rock Family Planning Servs., P.A. v. Dalton*, 60 F.3d 497 (8th Cir. 1995). The United States Supreme Court granted *certiorari* and held that the district court's order striking Amendment 68 in its entirety was overbroad. *Dalton v. Little Rock Family Planning Servs., P.A.*, 516 U.S. 474 (1996) (per curiam). Because the challenge to Amendment 68 only involved its conflict with Title XIX, "it was improper to enjoin its application to funding that does not involve the Medicaid program." *Id.* Furthermore, the Court emphasized that the Hyde Amendment was not permanent legislation, but instead part of the appropriation statute for certain executive departments in a given fiscal year. Because there had been different versions of the Hyde Amendment in the past, the temporal scope of the district court's order was overbroad, given that a different version of the Hyde Amendment might be enacted in the future. Additionally, to the extent that Section 1 of Amendment 68 had application allowed under the Supremacy Clause, Sections 2 and 3 of the amendment were viable as well. The Supreme Court reversed the Eighth Circuit decision affirming the injunction, and remanded for the entry of an order enjoining Section 1 of Amendment 68 only to the extent that it was in conflict with federal law. *Id.*

On August 9, 1996, the district court entered an order providing that "Arkansas Amendment 68 is . . . null and void, and its enforcement enjoined, to the extent it prohibits the use of state funds to pay for abortions for Medicaid eligible victims of rape or incest, for so long as the federal law mandates Medicaid funding for abortions for Medicaid eligible victims of rape or incest." This order is final and has not been challenged on appeal. Appellees and the intervenors then filed motions in this case for summary judgment, arguing that Amendment 68 was "preempted" by fed-

eral law and that the creation of the Medicaid Saving Trust Fund by a private individual for the purpose of providing funds for abortions for women in Arkansas pregnant as a result of rape or incest ensured that no public monies would be used to pay for such abortions, thereby rendering the suit meritless.

Chancellor Robin Mays, relying upon the United States Supreme Court's *per curiam* order in *Dalton v. Little Rock Family Planning Services, et al.,* 516 U.S. 474 (1996), the Eighth Circuit Court of Appeals' order, and the August 9, 1996, order of the United States District Court, found that the issue of federal preemption was determined by those decisions and further found that Amendment 68 was preempted by the Hyde Amendment with respect to Medicaid expenditures in cases of rape or incest. The Pulaski County Chancery Court also found that no issue of material fact existed with regard to the question whether public money was being placed in the Medicaid Saving Trust or to what extent the executive branch of Arkansas's government was involved in the creation and maintenance of the trust, and granted appellees' summary judgment motion on that issue as well, and accordingly, entered judgment for appellees as a matter of law.

Appellant argues three points on appeal. First, that the chancery court erred in finding that the federal district court order in *Dalton, supra,* preempted Amendment 68. As an additional argument under this point, appellant urges that Amendment 68 forces the state to terminate its participation in Medicaid. As her second point, appellant contends that the chancery court erred in finding no genuine issue of material fact relating to the origin of funds in the Medicaid Saving Trust or the extent of the Governor's involvement in its creation and operation. Appellant's third point is that the chancery court erred in refusing to grant appellant's motion to compel the deposition of Governor Huckabee.

■ ■ Appellant's first point on appeal raises questions of statutory and constitutional interpretation. On appeal, our task is to read the laws as they are written, and interpret them in accordance with established principles of statutory and constitutional construction, including the application of the Supremacy Clause of the United States Constitution. The fundamental rule is that

the words of the constitution or statute should ordinarily be given their obvious and natural meaning. *Knowlton v. Ward*, 318 Ark. 867, 889 S.W.2d 721 (1994). We review issues of statutory construction *de novo*; it is for this court to decide what a statute means. *Arkansas Dept. of Health v. Westark Christian Action*, 322 Ark. 440, 910 S.W.2d 199 (1995). We are not bound by the decision of the trial court; however, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Bryant v. Weiss*, 335 Ark. 534, 983 S.W.2d 902 (1998).

We have concluded that the trial court did not err in relying upon the decision of the United States Supreme Court in *Dalton v. Little Rock Family Planning Services, et al.*, 516 U.S. 474 (1996), leaving intact those portions of an earlier injunction which prohibited "the enforcement of Amendment 68 . . . to the extent that the Amendment imposes obligations inconsistent with federal law," *id.*, as well as the August 19, 1996, decision of the federal district court, pursuant to remand from the Supreme Court, which stated:

> Arkansas Amendment 68 is inconsistent with the Hyde Amendment and therefore is not permitted by Article 6, Section 2, of the United States Constitution, commonly referred to as the Supremacy Clause, to the extent that Amendment 68 prohibits the use of state funds to pay for abortions for Medicaid eligible victims of rape or incest. Arkansas Amendment 68 is therefore null and void, and its enforcement enjoined, to the extent it prohibits the use of state funds to pay for abortions for Medicaid eligible victims of rape or incest, for so long as the federal law mandates Medicaid funding for abortions for Medicaid eligible victims of rape or incest.

*Little Rock Family Planning Services v. Dalton*, No. LR-C-93-803 (E.D. Ark. Aug. 9, 1996).

Appellant contends that the order of the district court conflicts with the Supreme Court decision in *Dalton, supra*. We disagree. Both provide that Amendment 68 is null and void with regard to Medicaid payments for abortions for Medicaid-eligible victims of rape and incest so long as the Hyde Amendment provides for such payments. We have recently addressed this matter in

our decision in *Unborn Child Amendment Comm. v. Ward*, 328 Ark. 454, 943 S.W.2d 591 (1997), where we stated:

> Whatever construction we now give to Amendment 68, with regard to Medicaid patients in situations involving rape or incest, the amendment must give way to the Hyde Amendment to Title XIX so long as Arkansas participates in the Medicaid program, and the current version of the Hyde Amendment remains in effect.

*Id., (citing Dalton, supra).*

It is clear that the Chancellor did not err in finding that the Hyde Amendment and Amendment 68 cannot stand together, and that pursuant to the Supremacy Clause of the United States Constitution, provisions of Amendment 68 are preempted by federal law. We note further that while none of the parties cited us to a series of decisions from other states and circuits addressing this issue, our own research has revealed that states participating in Medicaid may not single out a particular service and restrict coverage to those instances where the patient's life is at stake, notwithstanding the enactment of a state law or amendment that purports to limit a state's funding for abortions other than to save the life of the mother. Rather, Title XIX of the Social Security Act of 1964 imposes a general obligation on states to fund mandatory coverage services and a state law or state constitutional amendment that categorically denied Medicaid coverage for such a procedure is not a reasonable standard consistent with the objectives of the Social Security Act. *See e.g., Harris v. McRae*, 448 U.S. 297 (1980); *Planned Parenthood Affiliates of Mich. v. Engler*, 73 F.3d 634 (6th Cir. 1996); *Hope Medical Group for Women v. Edwards*, 63 F.3d 418 (5th Cir. 1995), *cert. denied* 517 U.S. 1104 (1996); *Hern v. Beye*, 57 F.3d 906 (10th Cir.), *cert. denied, Weil v. Hern*, 517 U.S. 1011 (1995); *Elizabeth Blackwell Health Center for Women v. Knoll*, 61 F.3d 171 (3rd Cir.), *cert. denied* 516 U.S. 1093 (1995).

However, without citation to any authority, appellant urges that the participation of the State of Arkansas in Medicaid must be terminated in order to resolve the conflict. The Medicaid program was created in 1965, when Congress added Title XIX to the Social Security Act, 79 Stat. 343, as amended, 42 U.S.C. § 1396 *et*

*seq.*, with the goal of providing federal financial assistance to states that chose to reimburse certain costs of medical treatment for needy persons. "Although participation in the Medicaid program is entirely optional, once a state elects to participate, it must comply with the requirements of Title XIX." *Harris v. McRae*, 448 U.S. 297 (1980). In order to be eligible to collect federal Medicaid funds, Title XIX requires participating states, like Arkansas, to submit medical assistance plans which must be approved by the Secretary of Health and Human Services. 42 U.S.C. § 1396 (1992 & Supp. 1994). The medical assistance plan must "include . reasonable standards . . . for determining eligibility for and the extent of medical assistance under the plan which . . . are consistent with the objectives of [Title XIX]." 42 U.S.C. § 1396a(a)(17); *Beal v. Doe*, 432 U.S. 438 (1977).

For more than sixty-five years this state has clearly expressed the public policy to "accept the benefits of any acts now passed or hereafter to be passed by the Senate and the House of Representatives of the United States of America, to provide for cooperation with the states in the protection of mothers and infants and promotion of a public health program." 1931 Arkansas Acts 235; Ark. Code Ann. § 20-7-111(a) (Repl. 1991). When President Lyndon Johnson introduced the Medicaid package, Arkansas chose to adopt a Medicaid plan. Appellant does not contend that Arkansas has adopted legislation withdrawing from Medicaid. The sole question raised by appellant's argument is whether Amendment 68 contained self-executing language withdrawing the state from participation in Medicaid rather than accepting federal limitations upon the scope of Medicaid coverage. The provisions of Amendment 68 are brief:

§ 1.   *Public funding.*

No public funding will be used to pay for any abortion, except to save the mother's life.

§ 2.   *Public policy.*

The policy of Arkansas is to protect the life of every unborn child from conception until birth, *to the extent permitted by the Federal Constitution.*

§ 3.  *Effect of Amendment.*

> This amendment will not affect contraceptives or require an appropriation of public funds.

*Id.* (emphasis added).

Applying the fundamental rule that the words of the constitution or statute should ordinarily be given their obvious and natural meaning, *Knowlton, supra,* we first note that the public policy stated in Section 2 of the Amendment provides that the public policy of Arkansas is to protect the life of an unborn child "to the extent permitted by the federal Constitution." The plain language of Amendment 68 shows that it was intended to be effective only to the extent possible under the limitations of the Supremacy Clause of the United States Constitution. It is understandable why appellant has offered no citations of authority or persuasive reasoning why this court should accept and approve her request that the participation of Arkansas in the Medicaid program be terminated.

■ The chancellor found that Section 1 of Amendment 68 has been preempted by the Hyde Amendment with respect to Medicaid expenditures in cases of rape and incest, and further found that appellant has not cited any operative provision of law which would make the expenditure of public Medicaid funds for such abortions an illegal exaction. We agree with the Chancellor's findings with regard to appellant's first point on appeal.

With regard to appellant's second point on appeal, appellees suggest that we need only resolve this issue if we determine that Amendment 68 presently limits the use of state Medicaid funds for Medicaid payments. We disagree with this proposition. While we have already held that Section one of Amendment 68 cannot stand as a bar to the payment of Medicaid funds for abortions necessary as the result of rape or incest so long as the Hyde Amendment as written remains in effect, the United States Supreme Court held that it was improper to enjoin the application of Amendment 68 to funding that does not involve the Medicaid program. *Dalton v. Little Rock Family Planning Servs., supra.* Because Amendment 68 is still effective insofar as it applies to the use of public funds other

than those provided by the Medicaid program, it is necessary for us to address this point on appeal.

The Arkansas Medicaid Saving Trust was initiated on August 19, 1996, by a private individual; its stated purpose is to pay for Medicaid abortions performed as a result of rape or incest. The trust assumed legal liability to pay the Medicaid allowable costs of abortions for Medicaid eligible women whose pregnancies resulted from rape or incest. The trust's assumption of legal liability triggers the provisions of 43 C.F.R. §§ 135-140 (1998), which requires DHS to identify abortions for which the trust is liable and to return medical-provider bills for such abortions to those providers with instructions to submit the bills to the trust. Appellees submitted affidavits from previous defendant Tom Dalton and Ray Handley, the director of the Division of Medical Services, asserting that no public funds have been used or will be used to pay for an abortion so long as the trust remains in effect. The court also considered Handley's deposition. His uncontradicted testimony established that no entity at DHS has been involved in providing public funds to the trust and that no public funds have been paid to the trust. The chancery court granted appellees' motion for summary judgment, finding that no disputed issue of material fact existed with regard to the question whether public funds were placed in the trust. Specifically, the chancellor found that appellant's response to appellees' motion for summary judgment did not allege that these facts were in dispute or are unanswered by the supporting evidence. Appellant, relying solely upon the depositions of Dalton and Handley, readily admitted that she had no idea what funds were contained in the trust and could not identify any passage in those depositions tending to establish that public money had ever been placed in the trust or that executive branch officials were involved in the creation and maintenance of the trust.

■ ■ The affidavits and depositions of Dalton and Handley established a *prima facie* entitlement to summary judgment on the issue of public funds in the trust. At that point, appellant was obliged to meet proof with proof and demonstrate the existence of a material issue of fact. Appellant failed to meet that burden, submitting no other affidavits or proof. Appellant readily conceded that she had "no knowledge of what's in the trust fund whatso-

ever." She provided the court with no documents suggesting that any public monies had been placed in the trust fund, and could assert nothing beyond "motive" for her suggestion that public funds had been diverted to the trust. Appellant's suspicions about motive do not give rise to a genuine issue of material fact. A mere suspicion in the mind of the party against whom summary judgment is sought will not create a genuine issue of fact, nor does it suffice as good cause for further discovery. *BWH, Inc. v. Metropolitan National Bank*, 267 Ark. 182, 590 S.W.2d 247 (1979). When, as here, the movant makes a *prima facie* case for a summary judgment, the other party must discard the cloak of formal allegations and meet proof with proof by showing that an issue of fact exists. *Givens v. Hixson*, 275 Ark. 370, 631 S.W.2d 263 (1982). Appellant did not meet proof with proof. Accordingly, the chancery court did not commit error in finding that appellees were entitled to judgment as a matter of law.

Appellant also contends that a genuine issue of material fact exists as to whether there was any involvement of the executive branch of the state in the creation and operation of the Medicaid Saving Trust. Specifically, appellant argues that Governor Huckabee is responsible for the creation of the trust, and urges that the purpose of Amendment 68 is not merely to prevent the use of tax dollars to fund abortions, but rather to create a "wall of separation" between the practice of abortion and public entities in Arkansas. Appellant cites no persuasive authority for this proposition, arguing that the Amendment itself and its ballot title lead to this inescapable conclusion; we, however, fail to see the connection.

The Pulaski County Chancery Court found that even if appellant's premise — that officials of the executive branch asked the trustee to create the trust — is true, it would not affect the outcome of appellees' motion for summary judgment because appellant's allegation does not present a material fact. The chancellor found that "Amendment 68 does not prohibit publicly funded activities which may 'further or advance the performance of abortions.' Rather, Amendment 68 only prohibits public payment for abortions . . . [Appellant's] premise does not concern public payments for abortions and thus is not material." We agree

with the chancery court's finding that appellees were entitled to judgment as a matter of law, and affirm on this point as well.

■ Appellant's third and final point on appeal concerns her motion before the chancery court asking that the deposition of Governor Mike Huckabee be compelled. Appellant concedes in the first sentence of her argument on this point that the chancery court declined to rule on this motion. There is, therefore, no need for this court to read further. This court will not review a matter on which the trial court did not rule, and a party seeking to raise the point on appeal concerning a ruling has the burden to obtain a ruling. Matters left unresolved simply may not be raised on appeal. *Alexander v. State*, 335 Ark. 131, 983 S.W.2d (1998).

For the above and foregoing reasons, we affirm the decision of the chancery court.

Affirmed.

IMBER and SMITH, JJ., not participating.