NATIONSBANK, N.A. *v.* MURRAY GUARD, INC.

99-891 36 S.W.3d 291

Supreme Court of Arkansas
Opinion delivered January 25, 2001
[Petition for rehearing denied March 1, 2001.* ]

---

\* GLAZE and IMBER, JJ., not participating. THORNTON and HANNAH, JJ., would grant.

*Anderson, Murphy & Hopkins, L.L.P.,* by: *Mariam T. Hopkins* and *Scott D. Provencher,* for appellant.

*The Laser Law Firm, P.A.,* by: *Dan F. Bufford* and *Donna L. Gay,* for appellee.

DONALD L. CORBIN, Justice. Appellant NationsBank, N.A., appeals the judgment of the Pulaski County Circuit Court entered in favor of Appellee Murray Guard, Inc. For reversal, NationsBank argues that the trial court erred by: (1) entering judgment in Murray Guard's favor based on the jury's apportionment of fault; (2) allowing the testimony of a city planner regarding alleged code violations; (3) allowing Murray Guard to introduce into evidence a management agreement between NationsBank and its property management company; and (4) allowing an expert witness to testify that NationsBank failed to comply with Section 601 of the National Fire Prevention Association. This appeal involves issues of first impression, as well as issues of substantial public interest and statutory construction; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1), (4), and (6). We affirm.

The present appeal stems from damages caused by a fire that occurred January 24, 1994, on the fourteenth floor of the Worthen Bank Building. At the time of the fire, the building was owned by Worthen National Bank of Arkansas[1], but the fourteenth floor was leased to KPMG Peat Marwick ("KPMG"), an accounting firm. The fire was the result of a space heater igniting papers on a nearby desk. The space heater was either left on by a KPMG receptionist, or was accidently turned on by a Laidlaw, Inc., janitor cleaning KPMG's offices.

At approximately 10:00 p.m., on the evening of the fire, a Laidlaw supervisor, William Muse, reported smelling an odor of "extremely hot wood" on the fourteenth floor to the building's

---

[1] After the present litigation was filed, Boatmen's National Bank of Arkansas purchased Worthen. Boatmen's, in turn, was purchased by NationsBank, N.A., and Nations-Bank was substituted as the plaintiff in this litigation. Bank of America has since purchased NationsBank.

security guard, Don Hutchins. Hutchins was an employee of Murray Guard. According to Hutchins, he investigated the report, but after finding no problem determined that the smell was probably burned sawdust emanating from a workshop in the basement. Muse testified that he again notified Hutchins about an unusual smell he detected while checking on an employee on the eighteenth floor. Hutchins then dispatched his supervisor, Larry Minor, to the eighteenth floor to check out Muse's report. According to Muse, he repeatedly instructed Hutchins to contact the fire department. The fire alarms, however, did not go off until 11:56 p.m. According to Gary Jones, an Assistant Fire Marshal for the City of Little Rock, it took the fire department twenty-five minutes to locate the fire because security personnel initially reported that they smelled smoke on the eighteenth floor. NationsBank and two of its tenants, KPMG and the law firm of Wright, Lindsey & Jennings ("Wright"), suffered significant damages as a result of the fire.

NationsBank and KPMG filed suit against Murray Guard and Laidlaw alleging negligence in failing to detect the fire and failing to timely contact the fire department. Flake, Tucker, Wells & Kelley, Inc. ("Flake"), NationsBank's property management company, was also made a party to the suit when Murray Guard filed a third-party complaint against them. Wright filed a separate suit against Worthen, KPMG, and Laidlaw for its damages caused by the fire. The Wright suit was eventually consolidated with the present action. St. Paul Fire and Marine Insurance Company ("St. Paul") intervened to recover damages for the amounts it paid out for the business interruption losses of Wright.

Following mediation, all claims, cross-claims, and counter-claims were settled, with the exception of the claims against Murray Guard. These settlements included a payment of $22,535 from KPMG to NationsBank, in exchange for a release in accordance with the Uniform Contribution Among Joint Tortfeasors Act. Murray Guard subsequently settled the claims against it, except for those filed by NationsBank, KPMG, and St. Paul. St. Paul's claim was ultimately dismissed on a motion for summary judgment.

NationsBank and KPMG's claims and cross-claims were tried before a jury on March 29, 1999, through April 1, 1999. The parties stipulated to the amount of damages prior to trial. This stipulation provided that NationsBank sustained damages in the

amount of $1,635,000 and that KPMG sustained damages in the amount of $888,600. The case was submitted to the jury on interrogatories on the issue of liability. The jury returned a verdict apportioning liability as follows: KPMG, twenty-one percent; Murray Guard, thirty-two percent; and NationsBank, forty-seven percent. Following the jury's verdict, the trial court entered judgment in favor of Murray Guard on the basis of its interpretation of Arkansas's comparative-fault law, codified at Ark. Code Ann. § 16-64-122 (Supp. 1997). Specifically, the trial court ruled that under the statute, KPMG's fault could not be combined with the fault of Murray Guard for purposes of determining whether NationsBank was barred from recovering due to its own negligence. This appeal followed.

## I. Comparative Fault

For its first point on appeal, NationsBank argues that the trial court erred in entering judgment in favor of Murray Guard based on the jury's apportionment of fault. NationsBank contends that the fault of KPMG should be combined with the fault of Murray Guard, and thus NationsBank is less at fault and entitled to damages in the amount of $523,200, or thirty-two percent of $1,635,000, the amount of the stipulated damages, plus prejudgment interest. NationsBank supports this argument by pointing to the fact that it reached a settlement agreement with KPMG in the amount of $22,535. Murray Guard responds that it is improper to combine the fault of KPMG and Murray Guard because KPMG was a co-plaintiff in this action, not a defendant. In other words, KPMG was not a party from whom NationsBank was attempting to recover damages. We agree with Murray Guard.

■ This court reviews issues of statutory construction *de novo*, as it is for this court to decide what a statute means. *Simmons First Bank v. Bob Callahan Servs., Inc.,*340 Ark. 692, 13 S.W.3d 570 (2000); *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.*; *Stephens v. Arkansas Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000).

NationsBank relies on the case of *Riddell v. Little*, 253 Ark. 686, 488 S.W.2d 34 (1972), to support its argument that KPMG's

fault should be combined with the fault of Murray Guard. In *Riddell*, this court held that the fault of two codefendants could be combined for purposes of determining whether the fault of the plaintiff barred his recovery. This court reasoned that the legislature did not mean to go any further than to deny recovery to a plaintiff only when his negligence was at least fifty percent of the cause of the alleged damages. *Id*.

■ *Riddell* and its progeny, however, are inapplicable to the instant appeal. The comparative-fault statute analyzed by this court in *Riddell* was amended by the Arkansas General Assembly in 1975. Prior to its amendment, the statute allowed recovery where the negligence of the person injured or killed "is of less degree than the negligence of *any person, firm, or corporation causing such damage.*" *Id.* at 689, 488 S.W.2d at 36 (emphasis added) (citing Ark. Stat. Ann. § 27-1730.1 (Repl. 1962)). The amended version of the comparative-fault statute, section 16-64-122, clearly limits the comparison of fault:

> (a) In all actions for damages for personal injuries or wrongful death or injury to property in which recovery is predicated upon fault, liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party or parties from whom the claiming party seeks to recover damages.

> (b)(1) If the fault chargeable to a party claiming damages is of a lesser degree than the fault chargeable to the party or parties from whom the claiming party seeks to recover damages, then the claiming party is entitled to recover the amount of his damages after they have been diminished in proportion to the degree of his own fault.

> (2) If the fault chargeable to a party claiming damages is equal to or greater in degree than any fault chargeable to the party or parties from whom the claiming party seeks to recover damages, then the claiming party is not entitled to recover such damages.

Thus, the statute in its current form no longer provides for a comparison of fault among all those responsible for the harm.

■ The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Stephens*, 341 Ark. 939, 20 S.W.3d 397; *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999). In determining the meaning of a statute, the first rule is to construe it

just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* The statute must be construed so that no word is left void or superfluous and in such a way that meaning and effect is given to every word therein, if possible. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. *Id.*

■ In light of this court's rules regarding statutory construction, we reject NationsBank's argument that KPMG was a party from whom they sought to recover damages for purposes of section 16-64-122. At no time did NationsBank and KPMG claim damages from one another. In fact, the settlement between the two parties was the result of each party being exposed to potential contribution claims. Because Murray Guard had filed counterclaims against NationsBank and KPMG seeking contribution, both parties faced the possibility that one could end up paying a share of Murray Guard's liability, depending on the jury's apportionment of fault.

■ Moreover, NationsBank is the party that requested the jury instruction on comparative fault. The trial court instructed the jury as follows:

> [I]f the negligence chargeable to a party claiming damages was equal to or greater in degree than the negligence chargeable to a party from whom he seeks to recover ... then the party claiming damages is not entitled to recover from that party.

Such an instruction was opposed by Murray Guard. Counsel for NationsBank also argued to the jury that they could recover nothing if the jury found their fault to be greater than that of Murray Guard's. After hearing NationsBank's argument and being instructed on comparative fault, the jury returned a verdict apportioning the most fault to NationsBank. Based on this jury verdict, the trial court, in turn, entered judgment for Murray Guard. In light of the plain language of the statute and the events at trial, we cannot say that the trial court erred in refusing to combine the fault of Murray Guard and KPMG. Having determined that NationsBank is not entitled to entry of judgment, it is unnecessary for us to address NationsBank's argument regarding an award of prejudgment interest.

## II. Testimony of Mark Whitaker

For its second point on appeal, NationsBank argues that the trial court erred in allowing the testimony of Mark Whitaker, a Little Rock Plans Examiner Administrator, regarding NationsBank's alleged failure to comply with applicable building codes during its 1992 remodeling of the fourteenth floor. NationsBank contends that because Whitaker was specifically declared a lay witness, his testimony should have been limited to only those matters within his personal knowledge. The decision whether to admit relevant evidence, opinion testimony or otherwise, rests in the sound discretion of the trial court, and our standard of review of such a decision is whether the trial court has abused its discretion. *Arthur v. Zearley*, 337 Ark. 125, 992 S.W.2d 67 (1999); *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998).

Prior to trial, NationsBank filed a motion in limine attempting to exclude the testimony of Whitaker under Arkansas Rules of Evidence 401, 403, and 602. NationsBank argued that Whitaker was going to testify that the Worthen Bank Building did not meet the requirements of the city's building codes, despite the fact that the city issued a certificate of occupancy for the building, and that Whitaker's testimony was not based upon matters within his personal knowledge. The trial court denied this motion, ruling that Whitaker could testify as a lay witness. The court stated that Murray Guard's counsel could elicit testimony about discussions between Whitaker or one of his employees and bank officials regarding remodeling of the building in 1992.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ark. R. Evid 401. This court has repeatedly held, however, that a trial judge may exclude evidence, although relevant, if its probative value is substantially outweighed by the danger of unfair prejudice. *Ellis v. Price*, 337 Ark. 542, 990 S.W.2d 543 (1999); *see also* Ark. R. Evid. 403. Evidence regarding fire-safety measures on the fourteenth floor are certainly relevant to the issue of NationsBank's own liability. The question then becomes whether the probative value of Whitaker's testimony was substantially outweighed by unfair prejudice. NationsBank argues that it was highly prejudicial to allow a city employee to testify

about applicable code regulations. This argument is without merit, however, because NationsBank fails to demonstrate how it was prejudiced by Whitaker's testimony. Indeed, NationsBank was allowed to cross-examine Whitaker with regard to the fact that the city ultimately issued a certificate of occupancy to NationsBank.

Likewise, we reject NationsBank's contention that Whitaker testified about matters outside of his personal knowledge. Rule 602 provides that a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. The rule further provides that evidence to prove personal knowledge is not limited to the witness's own testimony. *Mitchell v. Mitchell*, 28 Ark. App. 295, 773 S.W.2d 853 (1989).

Here, Whitaker had been in his position as a Plans Examiner Administrator since 1989. As part of his job, he was involved in reviewing plans submitted by NationsBank in conjunction with remodeling the building's fourteenth floor. Whitaker's testimony was indeed limited to discussions that took place between his office and bank officials. At trial, Whitaker read for the jury provisions of the building code cited in a letter written by Charles Toland, one of Whitaker's employees, and sent to a contractor after reviewing the remodeling plans for the fourteenth floor. The trial court allowed such testimony over the objection of NationsBank because Whitaker's position with the Planning Commission made his looking at code violations, drafting reports, and assessing the code, a part of his job. The trial court, however, precluded Whitaker from rendering opinions about whether the building satisfied the applicable codes or whether the bank was negligent. Accordingly, we cannot say that the trial court abused its discretion in allowing Whitaker's testimony.

## III. Introduction of Lease Agreement

NationsBank next argues that the trial court erred in allowing Murray Guard to introduce into evidence a lease agreement between NationsBank and Flake, its property management company. NationsBank asserts that such an agreement is not relevant in an action between NationsBank and Murray Guard. The lease agreement provided that NationsBank would be responsible for hiring, training, supervising, and discharging all building personnel,

including security personnel. NationsBank argues that under Arkansas case law, parties contract for themselves, and a contract will not be construed for the benefit of a third party unless it clearly appears this was the intention of the parities. *See e.g., Cherry v. Tanda, Inc.*, 327 Ark. 600, 940 S.W.2d 457 (1997). Thus, according to NationsBank, this lease agreement could not be used for the benefit of Murray Guard. NationsBank's argument on this point is without merit.

█ Questions of relevancy are for the trial court to determine and its decision will not be overturned absent an abuse of discretion. *Lovell v. Beavers*, 336 Ark. 551, 987 S.W.2d 660 (1999). Murray Guard argues that any agreement regarding obligations for the provision of building security are relevant to the issues in this case. We agree, particularly in light of the fact that Hutchins, the security guard who failed to detect the fire and promptly notify fire officials, was actually hired by NationsBank prior to the time that Murray Guard began providing security for the bank building. Moreover, the jury was entitled to hear evidence regarding any training provided by both NationsBank and Murray Guard. NationsBank's argument on this point fails.

### IV. Testimony of Expert Witness

Finally, NationsBank argues that the trial court erred in allowing Murray Guard's expert witness, Michael Slifka, to testify that NationsBank failed to comply with National Fire Prevention Association ("NFPA") Section 601. Under section 601, building owners must provide their guard service with a complete layout of the building, as well as fire prevention equipment. NationsBank objected to Slifka's testimony because the NFPA standards were not part of the contract between NationsBank and Murray Guard, but rather are a set of guidelines applicable to innocent third parties, not contracting parties.

█ This court has long recognized that the admissibility of expert testimony rests largely within the broad discretion of the trial court, and NationsBank bears the burdensome task of demonstrating the trial court abused its discretion. *Mercantile Bank v. B & H Associated, Inc.*, 330 Ark. 315, 954 S.W.2d 226 (1997); *Collins v. Hinton*, 327 Ark. 159, 937 S.W.2d 164 (1997). Generally, the tendency is to permit the jury to hear the testimony of the person

having superior knowledge in a given field, unless clearly lacking in either training or experience, and too rigid a standard should be avoided. *Mine Creek Contractors, Inc. v. Grandstaff*, 300 Ark. 516, 780 S.W.2d 543 (1989). If there is some reasonable basis from which it can be said that the witness has knowledge of the subject beyond that of persons of ordinary knowledge, his evidence is admissible. *Id.*

Here, Slifka opined that property management for Nations-Bank should have informed the guards about the limited automatic-detection system in the building, particularly since a single guard was stationed in the lobby once everyone was gone for the day. He also testified that in his expert opinion, the Worthen Bank Building had been below minimum requirements for fire and life safety since at least the early 1980's. Finally, he testified that, in his opinion, had there been a sprinkler system on the fourteenth floor, it would have extinguished the fire with little damage assuming that the sprinkler system worked and that it met the recommended code requirements.

 Slifka's opinion testimony was clearly pertinent to the issue of fault in this case. Any references made to national standards simply informed the jury of the standard of care within the industry. Moreover, NationsBank had the opportunity to cross-examine Slifka both on the validity of his expert opinion and on the limitations of the NFPA standards. Accordingly, we cannot say that the trial court erred in allowing him to testify about such matters.

Affirmed.

JOSEPH P. MAZZANTI III and FRANK H. BAILEY, SPL. JJ., join in this opinion.

ARNOLD, C.J., THORNTON and HANNAH, JJ., dissent.

GLAZE and IMBER, JJ., not participating.

R AY THORNTON, Justice, dissenting. For more than thirty years, it has been the law in Arkansas that a plaintiff can recover damages from those whose negligence caused a loss if the negligence of the plaintiff is of a lesser degree than the combined negligence of the other parties whose negligence contributed to the loss. Today the majority overturns that well-established principle,

and concludes that because the plaintiff had settled its claim against one of the tortfeasors, the twenty-one percent apportionment of negligence against that tortfeasor could not be combined with the thirty-two percent negligence of a second tortfeasor for the purpose of allowing recovery by a plaintiff whose own negligence was less than fifty percent of the total negligence of all those whose negligence caused the loss. Disallowing a plaintiff, whose negligence is less than fifty percent of the total negligence of all parties whose negligence contributed to the loss, stands our law of comparative fault on its head, and I respectfully dissent.

A review of the development of law on comparative fault shows clearly that it has never been the legislative intent to prohibit recovery by a plaintiff found by a jury to have been less that fifty percent at fault. By enacting the Act 191 of 1955, the "Prosser Act," the General Assembly established the first comparative fault statute in Arkansas. *See, e.g., Walton v. Tull*, 234 Ark. 882, 356 S.W.2d 20 (1962). Under the provisions of the "Prosser Act," the recovery of damages was apportioned among all those whose negligent acts caused the damages in accordance with the degree of fault attributable to each of them. A plaintiff, whose own negligence was sixty percent of all negligence causing the loss, could still recover the forty percent of the damages attributable to others. The intent was to distribute the total liability so that each party would bear his fair share, taking both his injuries and his percentage of fault into account. *Id.* (citing Robert A. Leflar, *Comparative Negligence: A Survey for Arkansas Lawyers*, 10 Ark. L. Rev. 54 (1955)). Concerned that allowing recovery by a plaintiff whose negligence was more than fifty percent of the total fault, the legislature amended the statute to limit recovery to those instances where "the negligence of the person injured or killed is of a lesser degree than the negligence of any person, firm or corporation causing such damages." Ark. Stat. Ann. § 27-1730.1 (cited in *Walton, supra*).

In 1962 in *Walton, supra*, we interpreted this act to mean that the negligence of all tortfeasors should be aggregated, and that the plaintiff should be denied recovery only when his own negligence was fifty percent or higher. Writing for the court, Justice George Rose Smith stated: "We are not convinced that the legislature meant to go any farther than to deny a recovery to a plaintiff whose own negligence was at least fifty percent of the cause of the damage." *Id.* Justice Smith then warned that to go farther would "be

almost a return to the common law doctrine of contributory negligence." *Id.*

This principle has been the bedrock of our interpretation of the law of comparative fault, and in the case of *Riddell & McGraw v. Little,* 253 Ark. 686, 488 S.W.2d 34 (1972), we reemphasized that the basic purpose of the comparative fault statute was to distribute the total damages among those who cause them. We then stated: "Furthermore, the legislature did not mean to go any farther than to deny recovery to a plaintiff only when his negligence was at least fifty percent of the cause of the alleged injuries or damages." *Id.*

Murray Guard admits, and the majority agrees, that under the principles of *Walton, supra,* and *Riddell, supra,* that the plaintiff should be able to recover from KPMG and Murray Guard on the basis of their combined assessment of fault, by jury verdict, as fifty-three percent. However, the majority reasons that in 1975, the legislature overturned these cases by an amendment limiting the comparison of fault. According to the majority, twenty-five years ago, the law was changed. As a result of the 1975 amendment, according to the majority, "Thus, the statute in its current form no longer provides for a comparison of fault among all those responsible for the harm."

First, to address the conclusion that the 1975 statute had overturned the principles of comparative fault articulated in *Walton, supra,* and *Riddell, supra,* without anyone noticing, I have carefully reviewed the 1975 statute to see how such sweeping changes were accomplished without alerting anyone as to the effect of such changes. The statute reads as follows:

*16-64-122. Comparative fault.*

(a) In all actions for damages for personal injuries or wrongful death or injury to property in which recovery is predicated upon fault, liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party or parties from whom the claiming party seeks to recover damages.

(b)(1) If the fault chargeable to a party claiming damages is of a lesser degree than the fault chargeable to the party or parties from whom the claiming party seeks to recover damages, then the claiming party is entitled to recover the amount of his damages

after they have been diminished in proportion to the degree of his own fault.

(2) If the fault chargeable to a party claiming damages is equal to or greater in degree than any fault chargeable to the party or parties from whom the claiming party seeks to recover damages, then the claiming party is not entitled to recover such damages.

*Id.*

I can find no language specifically providing that a comparison of fault among all those responsible for the harm has been repealed. Indeed, the plain words of the present statute suggest that "liability shall be determined by comparing the fault chargeable to a claiming party with the fault chargeable to the party or parties from whom the claiming party seeks to recover damages." *Id.*

The earlier statute, which we interpreted in *Walton, supra,* and *Riddell, supra,* provides that recovery shall be allowed "where the negligence of persons injured or killed is of a lesser degree than the negligence of any person, firm or corporation causing such damage." Ark. Stat. Ann. § 27-1730.1.

Thus, according to the majority, the legislature overturned the principles of comparative fault by drawing a distinction between the phrase, "the negligence of any person, firm or corporation causing the damage," *id.*, and the phrase, "the fault chargeable to the party or parties from whom the claiming party seeks to recover damages." Ark. Code Ann. § 16-64-122. Just how this change of phrase was intended to overturn the principles of comparative fault eludes me, but at least I have the comfort of observing that it has eluded everyone else for twenty-five years.

The fine distinction upon which the majority opinion rests is that because KPMG was not a defendant in the plaintiff's action against Murray Guard, KPMG's fault of twenty-one percent cannot be aggregated with Murray Guard's fault of thirty-two percent for the purpose of determining whether NationsBank shall be allowed any recovery for the negligence of the other parties to the litigation.

This brings us to the pivotal question: Was KPMG a party from whom NationsBank claimed damages? The answer is "yes." In fact, NationsBank had been paid damages by KPMG in a settlement agreement during the course of this controversy. Yet because

NationsBank did not name KPMG as a defendant, which it could not do after the settlement, the majority takes the position that "[a]t no time did NationsBank and KPMG claim damages from one another." That is not accurate. NationsBank settled its claim against KPMG, and KPMG's negligence should be added to the negligence charged against Murray Guard. To hold otherwise will chill any possibility of settlement of claims between an injured party and joint tortfeasors.

For these reasons, I respectfully dissent, and I am authorized to state that Chief Justice ARNOLD and Justice HANNAH join in this dissent.

ARNOLD, C.J., and HANNAH, J., join.