Glenn HIGGINBOTHAM *v.* JUNCTION CITY SCHOOL
DISTRICT, Alvin Kelly, Leon Hines, Randall J. Lyons, Stan
Owens, John Sims, and Kevin Hux

97-749                                                     966 S.W.2d 877

Supreme Court of Arkansas
Opinion delivered April 16, 1998

*Pat Hall*, for appellant.

*William C. Brazil*, for appellees.

DONALD L. CORBIN, Justice. Appellant Glenn Higginbotham raises two issues against Appellee Junction City School District (the District), for whom Appellant was formerly employed as a high school principal, and the individual Appellees, the District's superintendent and school board members. The Union County Circuit Court upheld the District's decision to refuse Appellant's attempted withdrawal of his resignation. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(17), as this appeal involves a significant public interest and interpretation of the Teacher Fair Dismissal Act (the Act), codified at Ark. Code Ann. §§ 6-17-1501 to -1510 (Repl. 1993). We affirm.

In July 1994, the District hired Appellant as the high school principal for the 1994–95 school year. Appellant served as principal for the District until December 19, 1994, when Superintendent Alvin Kelly asked him to resign.

Kelly had conferenced with Appellant on both September 30, 1994, and October 24, 1994, about Appellant's performance of his duties. A memo dated September 30, 1994, from Kelly directed Appellant to allow Dale Hux, another teacher and dean of students, to handle discipline matters in order for Appellant to "supervise the instructional program, interact with the students and teachers in order to get to know them and their needs." The memo further set forth procedures for written announcements, intercom usage, lunch detention, and organizing "items of importance." After discussing these issues with Appellant, Kelly placed the memo in Appellant's personnel file.

Another memo from Kelly, dated October 25, 1994, followed the October 24, 1994 conference between Kelly and Appellant. In that memo, Kelly cited six concerns regarding discipline and gave suggestions for improvement. The issues in the October 25, 1994 memo were similar to those in the September 30, 1994 memo.

On December 19, 1994, Kelly presented a letter to Appellant, detailing ten serious concerns about Appellant's "effective and efficient operation" of the school. The concerns included Appellant's calling students "yard apes" over the intercom; failing to remember names of students and teachers; failing to maintain necessary materials for operating the school; paddling students without witnesses; "[e]xcessive cross-examination of teachers on routine referrals of students to the office"; poor written and oral communications skills; his monitoring activities, which were viewed as a "joke" by students; poor leadership; teachers' resentment of Appellant's evaluations of them; using profanity in the classroom; and failing to maintain professional rapport with teachers. The letter further stated:

> I am hereby requesting that you resign immediately. If you feel a resignation is not in order, I will begin termination procedures immediately.

Appellant wrote, "As of today, I resign," and signed his name across the letter. He then cleaned out his office and turned in his keys the same day. Kelly notified the board members of Appellant's resignation that night by telephone. Appellant later alleged that he wrote those words of resignation because he did not want a termination on his resume. Appellant also alleged that Kelly promised to pay him his salary for January if he resigned immediately.

On December 20, 1994, Appellant attempted to retract his resignation through letters written by his attorney to Kelly and the school's attorney, Bill Prewett. Appellant reported back to work on December 22, 1994, although no one else was there because of the holidays. The District responded that Appellant's resignation had already been accepted. The District further advised Appellant to request a hearing no later than January 5, 1995. Additionally, Prewett wrote:

> [T]he Superintendent of Schools will recommend to the Board at its meeting on January 10 that Mr. Higginbotham be terminated as of December 19, the day of his resignation. The recommendation for termination is based upon the reasons set forth in Mr. Kelly's letter of December 19 which was delivered to Mr. Higginbotham on that date. A copy of the letter is enclosed for your information.

Appellant requested a hearing, a transcript of the hearing, names of witnesses expected to testify at the hearing, and exhibits expected to be presented. Although the District made the exhibits and other discovery available for Appellant to copy, Appellant did not go to Prewett's office to copy them before the hearing.

The hearing occurred on February 1, 1995. Prewett presided as the hearing officer at the board's request. The board did not provide a court reporter, but tape recorded the hearing and had it transcribed. Prewett read statements against Higginbotham by parties who were not present at the hearing. Superintendent Kelly testified about the facts leading up to the resignation. Appellant and his attorney voluntarily left the hearing before it was over without making a statement or introducing evidence. After finding that Appellant had reported his resignation to the

Missouri Unemployment Commission in writing, the board, upon motion, voted to formally accept Appellant's resignation.

On April 21, 1995, Appellant appealed the board's decision to the Union County Circuit Court. Appellant's complaint alleged claims for violation of the Teacher Fair Dismissal Act, breach of contract, misrepresentation, outrage, mental distress, and duress. In the alternative, Appellant alleged that he was constructively discharged. The trial court conducted the hearings on November 1 and November 19, 1996. Appellant testified that he thought Kelly was just helping him by issuing the September 30, 1994 and October 25, 1994 directives because he had walked into a bad situation in the school, which had employed four principals within four years. Appellant further testified that he was not formally evaluated during his employment with the Junction City Public Schools; he admitted, however, that he was aware of the concerns notated in the two prior memos and was also aware of his options when he wrote and signed his resignation on the December 19, 1994 letter. During cross-examination, Appellant admitted that he intended for his resignation to be effective immediately. Appellant further admitted that in his application for Missouri unemployment benefits that he completed on December 20, 1994, he wrote "because I didn't fulfill job as told and then asked to resign, resigned." When questioned about why he left the February 1, 1995 school board hearing before it was over, Appellant testified that he left because he had heard enough accusations and realized he was not going to get anything accomplished and was not allowed to present his side at what he had referred to as the "kangaroo court."

Superintendent Kelly testified about the problems he discussed with Appellant in their two 1994 conferences. Kelly stated that he did not ask Appellant to sign either the September 30, 1994 memo or the October 25, 1994 memo, nor was Appellant told he could disagree or that the memos would be put into his file. Kelly also stated that Appellant told him that "if you don't want me here, I don't want to be here[.]" Kelly testified that he informed the board members of Appellant's resignation by telephone the night of December 19, 1994. Kelly further testified he would have suspended Appellant on December 19, 1994, if

Appellant had not resigned. Kelly admitted that he promised to pay Appellant his January salary, but stated that he did not do so because Appellant later tried to withdraw his resignation.

Margaret McGaha, assistant elementary principal at Junction City, testified that Appellant told her over the telephone "that he thought it was best that he resigned because he knew that Mr. Kelly, or we were unhappy with his work."

High school secretary Diana Dove testified that she often had to rewrite Appellant's announcements because they did not make any sense. Dove further testified that Appellant also kept shorter hours than the other administrators and had frequent memory problems.

Board members testified that they accepted Appellant's resignation over the telephone on December 19, 1994, when Kelly communicated it to them. Board member Randall Lyons testified that the board first accepted Appellant's resignation before terminating him.

In a letter opinion dated February 13, 1997, and judgment filed on March 12, 1997, the trial court concluded that Appellant properly resigned, that the board accepted the resignation when delivered to Kelly as the board's agent, and that the board denied Appellant's attempt to withdraw his resignation at the February 1, 1995 hearing. The trial court found that there was sufficient cause for the denial of Appellant's attempted withdrawal of his resignation and that the board did not act in an arbitrary, capricious, or discriminatory manner. The trial court also found that Appellant was not under duress when he resigned. The trial court dismissed all of the claims but the Act violations on the basis that an appeal under the Act cannot be expanded to include tort and contract actions. The trial court did not rule on the issue of whether the District conducted a proper termination proceeding due to its finding that Appellant had resigned.

Additionally, the trial court found that there was insufficient evidence to substantiate Appellant's alternative claim for constructive discharge. Given that two board members worked at the school on a part-time basis, the trial court had concerns that the

board was not completely impartial. The trial court concluded, however, that there was sufficient evidence to support the board's actions. The trial court further found that the record of the February 1, 1995 hearing was properly preserved and that the twenty-seven gaps in the transcript did not affect its substance or overall accuracy. On April 7, 1997, Appellant filed notice of this appeal.

■ This court addressed the standard of review for school board decisions in *Hamilton v. Pulaski County Special Sch. Dist.,* 321 Ark. 261, 900 S.W.2d 205 (1995):

> We recognize that it is not our function to substitute our judgment on renewal matters for either that of the circuit court or that of the School Board. *Allen v. Texarkana Public Schools,* 303 Ark. 59, 794 S.W.2d 138 (1990); *Green Forest Public Schools v. Herrington,* 287 Ark. 43, 696 S.W.2d 714 (1985). When the issue before us is whether procedures under the Teacher Fair Dismissal Act have been strictly complied with, however, that is clearly a matter for this court's review.

*Id.* at 266, 900 S.W.2d at 207.

Appellant first argues that the trial court erred when it upheld the District's decision to terminate him. Specifically, Appellant alleges violations of the District's policies and section 6-17-1507, which sets forth the involuntary termination procedures under the Act:

> (a) A teacher may be terminated during the term of any contract for any cause which is not arbitrary, capricious, or discriminatory.
>
> (b) The superintendent shall notify the teacher of the termination recommendation.
>
> (c) The notice shall include a simple but complete statement of the grounds for the recommendation of termination and shall be sent by registered or certified mail to the teacher at the teacher's residence address as reflected in the teacher's personnel file.

The trial court specifically found that Appellant had resigned and thus expressly declined to make a ruling on the involuntary termination procedures; hence, this argument fails on its face. In its letter opinion dated February 13, 1995, the trial court wrote:

> Last, there is the argument that defendant did not comply with the statute and its own policies in terminating plaintiff. This issue cannot be fully addressed because of the circumstances of the case . . . . *Defendant considered plaintiff to have resigned and, therefore, did not initiate termination proceedings.* Plaintiff was no longer available to receive any counseling or paperwork associated with the termination process. The primary purpose of the hearing was to act on plaintiff's request to withdraw his resignation . . . . *No finding is made as to the termination procedure as that was not developed due to plaintiff's resignation.* [Emphasis added.]

■ Clearly, the trial court did not rule on the termination procedures provided in section 6-17-1507 and, in fact, expressly declined to rule on this issue. Appellant's failure to obtain a ruling below bars review of this issue on appeal. *Morrison v. Jennings,* 328 Ark. 278, 943 S.W.2d 559 (1997).

■ Furthermore, the facts of this case support the trial court's conclusion that Appellant resigned. Appellant testified that he resigned, reported in writing that he resigned when applying for unemployment benefits, and wrote and signed his resignation across the December 19, 1994 letter prepared by Kelly. Kelly testified that Appellant stated that he did not want to be there if he was not wanted. McGaha testified that Appellant told her he resigned. Accordingly, we cannot say that the trial court's conclusion that Appellant resigned was clearly erroneous, and we affirm on this issue.

Likewise, we conclude that Appellant's reliance on Act 625 of 1989, now codified at section 6-17-1503, as applied to the involuntary termination procedures, is misplaced. That section provides in relevant part:

> A nonrenewal, termination, suspension, or other disciplinary action by a school district shall be void unless the school district *strictly complies with all provisions of this subchapter* and the school district's applicable personnel policies. [Emphasis added.]

■ Appellant correctly states that this court has consistently interpreted section 6-17-1503 to require strict compliance with the termination procedures set forth in section 6-17-1507. *Spainhour v. Dover Pub. Sch. Dist.,* 331 Ark. 53, 958 S.W.2d 528

(1998); *Hannon v. Armorel Sch. Dist. #9*, 329 Ark. 267, 946 S.W.2d 950 (1997); *Lester v. Mount Vernon-Enola Sch. Dist.*, 323 Ark. 728, 917 S.W.2d 540 (1996); *Hamilton*, 321 Ark. 261, 900 S.W.2d 205; *Western Grove Sch. Dist. v. Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994). The substantial-compliance standard no longer controls proceedings under the Teacher Fair Dismissal Act. *Spainhour*, 331 Ark. 53, 958 S.W.2d 528. Act 625 is unequivocal. *Id.* This standard of strict compliance does not, however, aid Appellant in his argument on appeal, as he was not involuntarily terminated from his position, but instead, resigned.

Appellant next argues that the trial court erred when it upheld the District's decision to deny his request to withdraw his resignation. Specifically, Appellant argues that he retracted his resignation on December 20, 1994, through his letters to the District and by reporting back to work on December 22, 1994. Appellant further argues that the delivery of his resignation was not effective because the board did not formally vote to accept it.

Section 6-17-1506 provides in relevant part:

> (a) Every contract of employment made between a teacher and the board of directors of a school district shall be renewed in writing on the same terms and the same salary, unless . . . *during the period of the contract* or within ten (10) days after the end of the school year, *the teacher shall deliver or mail by registered mail to the board of directors his or her resignation as a teacher,* or unless such contract is superseded[.]   [Emphasis added.]

The trial court based its ruling on this court's interpretation of section 6-17-1506 in *Teague v. Walnut Ridge Sch.*, 315 Ark. 424, 868 S.W.2d 56 (1993). In that case, Teague, who was employed as a band director, hand-delivered his resignation to the principal, who in turn delivered it to the superintendent, after the board had already renewed his contract for the following year. The resignation was addressed to the principal, superintendent, and board of education. Teague later attempted to withdraw his resignation on the basis that the school board had not yet accepted it. This court rejected Teague's argument and held that the resignation was effective before the board officially accepted it. This court held:

> [S]ection 6-17-1506 does not require the board to take any official action in response to a teacher's resignation. Had the legislature intended to require a school board to officially accept a teacher's resignation, it could have so provided. It did not.

*Id.* at 427-28, 868 S.W.2d at 57-58. This court ultimately concluded that substantial compliance was met; thus, the appellant's resignation was effective. This court emphasized:

> [O]ur holding is based in part on the facts that appellant delivered his resignation to the principal with full intent that it make its way to the school board and that knowledge of the resignation made its way to the school board prior to appellant's attempt to revoke his resignation.

*Id.* at 428, 868 S.W.2d at 58.

■ Although the holding in *Teague* may be distinguished on the grounds that Teague's resignation was after his contract was renewed and was decided under the substantial-compliance standard, we observe that the General Assembly has not amended the Act to require a school district's board of directors to formally accept a teacher's resignation, nor has the Act been amended to require a school board to allow a teacher to withdraw his or her resignation. *Teague* still controls the issue of delivery, which is effective upon receipt by the superintendent. We hold that receipt of a resignation by the superintendent satisfies the requirement of delivery under section 6-17-1506 and constitutes strict compliance under the Act.

■ Moreover, Ark. Code Ann. § 6-12-108(b) (1987) defines the superintendent of schools "as the executive officer of a school district board of directors directing the affairs of the school district[.]" It follows that the superintendent serves as the agent for the board. Thus, Appellant's resignation was effective when delivered to Superintendent Kelly in writing. Appellant testified that he was aware that his resignation would make its way to the school board via Kelly before he attempted to retract it.

■ A more complicated issue arises as to whether Appellant's resignation, which Kelly requested, is equivalent to a firing, which would necessarily require strict compliance with section 6-17-1507. Although Appellant asserts that he resigned under

duress, a resignation made in order to avoid termination proceedings is not necessarily involuntary. *See generally* 78 C.J.S. *Schools and School Districts* § 253 (1995). *See also Alexander v. Alabama State Tenure Comm'n*, 358 So. 2d 1032 (Ala. Civ. App. 1978). Similarly, a school official's request to a teacher for that teacher's resignation, as Kelly made here to Appellant, does not render a resignation involuntary. 78 C.J.S. *Schools and School Districts* § 253. *See also Williams v. Lafayette Parish Sch. Bd.*, 533 So. 2d 1359 (La. Ct. App. 1988).

■ ■ This court has held that in order to prove duress, the plaintiff must prove that he involuntarily accepted the defendant's terms, that there were no alternatives, and that the defendant created the circumstances by coercion. *Cox v. McLaughlin*, 315 Ark. 338, 867 S.W.2d 460 (1993). Here, Appellant voluntarily chose to resign rather than be fired and was fully aware of his alternatives. Kelly not only gave Appellant his alternatives verbally, but also presented them in writing in the December 19, 1994 letter, on which Appellant wrote and signed his resignation. Kelly did not use wrongful or oppressive conduct; rather, he presented Appellant's options to him.

■ ■ We conclude that the trial court's finding that Appellant resigned is not clearly erroneous, nor was the District's vote to formally accept Appellant's resignation. Testimony by Kelly and McGaha, support the trial court's finding that Appellant admitted he resigned. Additionally, Appellant admitted that he stated in his application for Missouri unemployment benefits that he resigned. Therefore, the board's decision to accept his resignation was not arbitrary, capricious, or discriminatory. A cause for termination is arbitrary and capricious if it has no rational basis. *Hannon*, 329 Ark. 267, 946 S.W.2d 950. The trial court correctly concluded that Appellant was not under duress at the time he resigned because he was aware of his alternatives. The statements Appellant made immediately after he tendered his written resignation to Kelly, in which he said he was not going to fight him on it, also show that Appellant was aware that Kelly would deliver the document to the school board who would act on it. The individual school board members testified that Kelly contacted them by

telephone on December 19, 1994, and informed them of Higgin-botham's resignation.

We recognize that strict compliance is now the standard for determining if Appellant's resignation was proper according to the language found in section 6-17-1506. Under the facts as stated in this case, the District strictly complied with the Teacher Fair Dismissal Act when it voted to accept Appellant's resignation, which was effective upon delivery to Kelly.

Moreover, we are not willing to foreclose a teacher's right to resign by choice when confronted with the options of resignation and involuntary termination. Appellant testified that he was aware of his rights under the Act and the District's policies. He stated that he chose to resign because he did not need a termination on his record. Certainly, we believe it benefits the individual teacher to have the choice of resignation, and we will not deprive teachers of that choice in future cases. Nothing in the Act prohibits a school district from presenting these options to a teacher before initiating termination procedures.

We construe the General Assembly's silence as tacit approval of our interpretation of section 6-17-1506's delivery requirement as set forth in *Teague*, 315 Ark. 424, 868 S.W.2d 56. *See, e.g., Ragar v. Brown*, 332 Ark. 214, 964 S.W.2d 372 (1998). We will therefore defer any departures from the plain language of the Act to that legislative body. *Small v. Cottrell*, 332 Ark. 225, 964 S.W.2d 383 (1998).

Affirmed.

NEWBERN, J., not participating.