Don WILLIAMS *v.*
LITTLE ROCK SCHOOL DISTRICT

01-499                                              66 S.W.3d 590

Supreme Court of Arkansas
Opinion delivered February 14, 2002
[Petition for rehearing denied March 21, 2002.]

*Roachell Law Firm*, by: *Richard W. Roachell*, for appellant.

*Friday, Eldredge & Clark*, by: *John C. Fendley, Jr.*, for appellee.

**D**ONALD L. CORBIN, Justice. Appellant Don Williams appeals the order of the Pulaski County Chancery Court dismissing his suit against Appellee Little Rock School District ("LRSD"). For reversal, Williams argues that the chancery court erred in ruling that it lacked subject-matter jurisdiction and thereby dismissing his suit. As this appeal involves an issue of first impression and statutory interpretation, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1) and (6). We agree with Williams and, therefore, reverse and remand this matter to the chancery court.

During the 1997-98 school year, Williams was employed with the LRSD as a nonprobationary school teacher at Gibbs Elementary School. On May 4, 1998, Williams verbally informed the school's principal, Felicia Hobbs, that he wished to resign. Hobbs, in turn, informed Williams that she needed him to submit a written resignation. The following morning, Williams contacted Hobbs and stated that he had acted hastily and wished to withdraw his resignation. Hobbs informed Williams that she had already reported his resignation to administration officials who had decided to accept his resignation. On May 28, 1998, the LRSD's Board of Directors met and formally approved Williams's oral resignation.

Williams subsequently filed suit against the LRSD on January 19, 2000, claiming that the Board's acceptance of his oral resignation was in violation of the provisions of the Arkansas Teacher Fair Dismissal Act ("TFDA"), codified at Ark. Code Ann. § 6-17-1501 to 1510 (Repl. 1999). Specifically, Williams argued that because his resignation did not comply with the TFDA's resignation requirements, the school district's act of accepting his resignation was void and resulted in a breach of his teaching contract. Williams sought declaratory and injunctive relief, including reinstatement to his former position and back pay. The LRSD responded with a motion to dismiss, alleging that the chancery court lacked subject-matter jurisdiction over Williams's claim. According to the LRSD, Williams's exclusive remedy under section 6-17-1510(d) of the TFDA was to file an appeal of the Board's decision in circuit court within seventy-five days of the Board's decision.

A hearing was held on the motion to dismiss, and after hearing arguments from both parties, the chancellor granted the motion. The chancellor found that the exclusive remedy provision of section 6-17-1510(d) was applicable to the present case, and thus, Williams was required to file an appeal of the Board's decision in circuit court. In a written order filed February 5, 2001, the chancellor

dismissed Williams's claim with prejudice. From that order, comes the instant appeal.

■ We review a trial court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiff. *Goff v. Harold Ives Trucking Co., Inc.*, 342 Ark. 143, 27 S.W.3d 387 (2000); *Arkansas Tech Univ. v. Link*, 341 Ark. 495, 17 S.W.3d 809 (2000). In testing the sufficiency of a complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and all pleadings are to be liberally construed. *Id.*

With this standard in mind, we turn to the merits of Williams's argument on appeal. Williams argues that the trial court erred in dismissing his complaint on the basis of a lack of subject-matter jurisdiction because the exclusive-remedy provision of section 6-17-1510(d) is not applicable to cases involving resignations. Williams also argues that the exclusive-remedy provision presupposes notice and a hearing before the Board. The LRSD counters that the Board's action in voting to accept Williams's resignation amounted to a nonrenewal of his contract, and, as such, it falls within the ambit of section 6-17-1510(d). The LRSD further avers that any issues regarding its compliance with the TFDA should have been raised in circuit court within the seventy-five day time period. The issue before this court, then, is whether the exclusive-remedy provision of section 6-17-1510(d) governs in the present situation.

■ As this issue requires us to engage in statutory interpretation, we initially point out that the basic rule of statutory construction is to give effect to the intent of the General Assembly. *Barclay v. First Paris Holding Co.*, 344 Ark. 711, 42 S.W.3d 496 (2001); *NationsBank, N.A. v. Murray Guard, Inc.*, 343 Ark. 437, 36 S.W.3d 291 (2001). In considering the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* The statute must be construed in such a way so that no word is left void or superfluous, with meaning and effect given to every word therein, if possible. *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation. *Id.* Where a statute is ambiguous, however, we must interpret it according to the legislative intent. *Barclay*, 344 Ark. 711, 42 S.W.3d 496. In reviewing the act in its entirety, this court will reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.* We also

look to the legislative history, the language, and the subject matter involved. *Id.*

Having set forth the rules of statutory construction, we now turn to the statute itself in order to determine its applicability in the present case. Section 6-17-1510(d) provides:

> The *exclusive remedy* for any nonprobationary teacher aggrieved by the decision made by the board shall be an appeal therefrom to the circuit court of the county in which the school district is located, within seventy-five (75) days of the date of written notice of the action of the board. Additional testimony and evidence may be introduced on appeal to show facts and circumstances showing that the *termination* or *nonrenewal* was lawful or unlawful. [Emphasis added.]

■ In arguing that this section applies to Williams, the LRSD focuses on the language "any . . . teacher aggrieved by the decision made by the board." According to the LRSD, Williams was aggrieved by the Board's decision to accept his resignation, thus he was required to file an appeal in circuit court within the prescribed time limits. This particular language must be read, however, in the context of the entire section. First, looking to the title of section 6-17-1510 it reads, "Board action on *termination or nonrenewal* — Appeal." (Emphasis added.) This court has held that even though the title of an act is not part of the law, it may be referred to in order to help ascertain the intent of the General Assembly. *Routh Wrecker Serv., Inc. v. Wins*, 312 Ark. 123, 847 S.W.2d 707 (1993). Moreover, each of the subsections preceding subsection (d) deals specifically with instances of termination or nonrenewal. Finally, the second sentence of subsection (d) provides for the taking of additional proof on appeal, but specifically limits itself to proof on issues of termination or nonrenewal.

■■ This court has previously acknowledged its reluctance to interpret a statute in a manner contrary to its express language unless it is clear that a drafting error or omission has circumvented legislative intent. *Yamaha Motor Corp. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001); *State v. McLeod*, 318 Ark. 781, 888 S.W.2d 639 (1994). There is nothing in the language of section 6-17-1510 that either explicitly or impliedly states that the exclusive remedy of an appeal to circuit court is applicable to cases involving a disputed resignation. The fact that the General Assembly specifically stated the types of grievances that must be appealed to circuit court is a prime indicator of legislative intent; thus, we

will not interpret this section in a manner that will circumvent that intent.

We are likewise unpersuaded by the LRSD's argument that section 6-17-1510(d) is applicable because the Board's action of voting to accept Williams's resignation amounted to a decision to terminate his contract. In its brief to this court, the LRSD states that the Board's action amounted to a termination of Williams's teaching contract. In oral arguments to this court, however, counsel for the LRSD wavered when questioned about the nature of the school board's action. Initially, counsel stated that it was the Board's position that this was simply a situation involving a resignation, but later began asserting that the Board's action constituted a termination of Williams's contract. We do not agree with this assertion.

■ The LRSD mistakenly asserts that this court in *Teague v. Walnut Ridge Schs.*, 315 Ark. 424, 868 S.W.2d 56 (1993), clearly implied that a board action on a disputed resignation constituted a nonrenewal of a contract. There, a teacher submitted his resignation to his principal but later attempted to revoke it. After the school district voted to accept his resignation, the appellant filed suit in chancery court requesting reinstatement to his prior position. The chancery court dismissed his complaint. On appeal, he argued that his letter was an offer to resign, capable of being revoked until the school board acted on the offer. In affirming the chancellor, this court held that section 6-17-1506 did not require the board to take any official action in response to the appellant's resignation. Section 6-17-1506(a) (Repl. 1997) states in relevant part:

> Every contract of employment made between a teacher and the board of directors of a school district shall be renewed in writing on the same terms and for the same salary, unless . . . during the period of the contract or within ten (10) days after the end of the school year, the teacher shall deliver or mail by registered mail to the board of directors his or her resignation as a teacher, or unless such contract is superseded[.]

In interpreting this section, this court stated, "[h]ad the legislature intended to require a school board to officially accept a teacher's resignation, it could have so provided. It did not." *Id.* at 428, 868 S.W.2d at 58. Thus, the appellant's action of delivering his resignation to the principal constituted substantial compliance with the TFDA's resignation requirements.

In *Higginbotham v. Junction City Sch. Dist.*, 332 Ark. 556, 966 S.W.2d 877 (1998), this court rejected an argument that a school board's acceptance of a resignation that the appellant had attempted to revoke constituted a constructive termination. In that case, the school district's superintendent sent the appellant a letter requesting his immediate resignation or face termination procedures. The appellant wrote on the superintendent's letter that he resigned, cleaned out his office, and turned in his keys. The next day the appellant attempted to revoke his resignation, but was informed by the school district that his resignation had already been accepted. After the school board met and formally accepted his resignation, the appellant appealed to the circuit court, which held that his resignation was valid. In affirming the circuit court, this court held that the appellant's resignation satisfied the delivery requirements of 6-17-1506. This court stated that the rule in *Teague*, that delivery is effective upon receipt by the superintendent, was still controlling.

If we were to now accept the LRSD's argument that Williams's resignation amounted to either a termination or nonrenewal, this court's holdings in *Teague* and *Higginbotham*, that a resignation is effective without action by a school board, would be rendered meaningless. In light of the statutory language and this court's case law, it is clear that Williams resigned his position and was not subjected to nonrenewal or termination proceedings that would have triggered the exclusive remedy provision of section 6-17-1510(d). Accordingly, Williams was not limited to pursuing an action against the LRSD in circuit court within the seventy-five day time period. Accordingly, we reverse the chancery court's finding that it lacked jurisdiction over Williams's claim.

Finally, we take this opportunity to clarify an aspect of our law with respect to the TFDA, specifically the compliance standard set forth in section 6-17-1503.[1] At the time that Williams's cause of action arose, section 6-17-1503 provided:

> This subchapter is not a teacher tenure law in that it does not confer lifetime appointment nor prevent discharge of teachers for any cause which is not arbitrary, capricious, or discriminatory. A *nonrenewal, termination, suspension, or other disciplinary action* by a

---

[1] The General Assembly amended section 6-17-1503 in Act 1739 of 2001 to require that the school district substantially comply with the provisions of the TFDA.

school district shall be void unless the school district strictly complies with all provisions of this subchapter and the school district's applicable personnel policies. [Emphasis added.]

Relying on this section, Williams alleges that the school district's action in accepting his resignation was void because it failed to strictly comply with the requirements for a resignation set forth in section 6-17-1506. Such reliance is misplaced, however. Turning again to the principles of statutory construction and giving the words of this section their ordinary and usually accepted meaning, it is apparent that the General Assembly's intent was to require strict compliance by the school district with the TFDA in the enumerated instances: nonrenewal, termination, suspension, or other disciplinary actions. This interpretation is reinforced when considered in light of the TFDA's underlying purpose, namely to protect teachers in their jobs from arbitrary and capricious actions committed by the school district. The purpose of the TFDA is not to protect teachers from their own actions.

In *Teague*, 315 Ark. 424, 868 S.W.2d 56, this court recognized that where there is a disputed resignation, the issue on review is whether the teacher *substantially complied* with the resignation procedures of section 6-17-1506. As previously pointed out, the *Teague* court held that a school board need not take any official action in order for a resignation to be deemed effective. If no school board action is required for a resignation to become effective, then it cannot be said that a school district's failure to strictly comply with the resignation procedures automatically results in a resignation being voided.

Part of the current confusion over this issue may well stem from this court's opinion in *Higginbotham*, 332 Ark. 556, 966 S.W.2d 877. There, this court initially stated that the appellant's reliance on the strict-compliance provision was misplaced. "This standard of strict compliance does not, however, aid Appellant in his argument on appeal, as he was not involuntarily terminated from his position, but instead, resigned." *Id.* at 565, 966 S.W.2d at 881. The court in *Higginbotham* recognized that *Teague* was decided under a substantial-compliance standard, but then attempted to distinguish the two cases, ultimately holding that receipt of a resignation by a superintendent constituted strict compliance under the TFDA. This holding was inaccurate for two reasons. First, *Teague* and *Higginbotham* are not distinguishable. Both cases involved disputed resignations and their subsequent effectiveness. Moreover, both cases were decided after Act 625 of 1989 instituted a strict

compliance standard in nonrenewal, termination, suspension, or disciplinary cases. The only distinction in these two cases is that the court in *Teague* clearly recognized that strict compliance was not the applicable standard in resignation cases, while there was some confusion on the issue in *Higginbotham*. Therefore, that portion of *Higginbotham* that mistakenly applies a strict-compliance standard for resignation cases is hereby overruled.

We thus reverse and remand this case to the chancery court for proceedings consistent with the foregoing opinion.

GLAZE and IMBER, JJ., concur.

BROWN and THORNTON, JJ., dissent.

TOM GLAZE, Justice, concurring. I join the majority opinion in this case, but add the following reasons. Arkansas Code Annotated section 6-17-1506 (Repl. 1997) sets forth the procedures by which a teacher is to tender his or her resignation. That statute provides that teacher contracts are to be renewed every year, in writing, on the same terms and for the same salary for the next school year, unless

> [d]uring the period of the contract or within ten (10) calendar days after the end of the school year, the teacher shall *send by certified or registered mail to the president, vice president, or secretary of the board of directors of the school district, with a copy to the superintendent . . . his or her resignation* as a teacher."

§ 6-17-1506(a)(2) (emphasis added).

As noted by the majority, the strict compliance standard found in Ark. Code Ann. § 6-17-1503 does not apply in resignation situations. *See Teague v. Walnut Ridge School District*, 315 Ark. 424, 868 S.W.2d 56 (1993) (where the issue is a disputed resignation, the issue on review is whether the teacher substantially complied with the resignation procedures of § 6-17-1506). Here, however, in my view, Williams failed to *substantially* comply with those procedures. Williams tendered an oral resignation to the principal of the school where he taught, instead of mailing a written notice to the president of the school board with a copy to the superintendent. By way of contrast, in *Teague, supra*, the teacher sent a letter to the principal, and that letter was given to the school superintendent, who communicated the resignation to the school board members. In *Higginbotham v. Junction City School District*, 332 Ark. 556, 966 S.W.2d 877

(1998), the teacher signed his name to a resignation letter, and the superintendent then notified the board members of Higginbotham's resignation that night by telephone. Here, Williams attempted to tender to the school principal an *oral* resignation, and the principal conveyed that oral resignation to "administration officials." There was no written resignation, and there was nothing conveyed to the superintendent. This attempted resignation was void because it failed to substantially comply with the statute. I believe the trial court was wrong in dismissing his complaint for this reason as well.

IMBER, J., joins this concurrence.

ROBERT L. BROWN, Justice, dissenting. Two things concern me about the majority opinion. The first is that the majority analyzes this case as if it were merely a resignation case and, thus, not covered by the Teacher Fair Dismissal Act. This case is not a resignation case. It is a *disputed* resignation case where the teacher reneged on his resignation, and the School Board took action and accepted it anyway. This equates to a termination. Williams, in his response to the motion to dismiss, referred to it as a termination where strict compliance with the Act was required. And the chancery court likewise found that the School Board had *terminated* Williams's employment.

This leads to my second concern which is that Williams filed his complaint as a violation of the Teacher Fair Dismissal Act. He now seeks to distance himself from the Act for purposes of the statute of limitations. In his complaint, Williams initially stated that the Act governs resignations and then alleged:

12. The acceptance of Willams's oral resignation is in violation of the Teacher Fair Dismissal Act and, therefore, a breach of the 1997-98 employment contract.

Williams then prayed for a declaration that the School Board's action in accepting his resignation was unlawful and asked for reinstatement and back pay. The School District moved to dismiss the complaint under Ark. R. Civ. P. 12(b), as untimely. As the majority correctly points out, in our analysis under Rule 12(b), we accept the allegations made in the complaint as true. Williams's complaint manifestly asserted that the School Board's action, in accepting a resignation that he had rescinded, wronged him.

So what is his remedy? When a teacher is "aggrieved" by School Board action, the recourse is spelled out in the Teacher Fair Dismissal Act:

> (d) The *exclusive remedy* for any nonprobationary *teacher aggrieved* by the decision made by the board shall be an appeal therefrom to the circuit court of the county in which the school district is located, within seventy-five (75) days of the date of written notice of the action of the board. Additional testimony and evidence may be introduced on appeal to show facts and circumstances showing that the termination or nonrenewal was lawful or unlawful.

Ark. Code Ann. § 6-17-1502(d) (Repl. 1999). Clearly, Don Williams alleged in his complaint that he was aggrieved by the School Board's acceptance of his resignation, which he tried to retract. Clearly, he invoked the Teacher Fair Dismissal Act for relief. Clearly, under the Act, he had to bring his appeal within 75 days of the School Board's action. And clearly, Williams at least, believed that this was a termination case under the Act because he referred to it as such in his response to motion to dismiss.

This court decided an almost identical case four years ago. *See Higginbotham v. Junction City Sch. Dist.*, 332 Ark. 556, 966 S.W.2d 877 (1998). In that case, as in the present case, a superintendent resigned and then the next day attempted to withdraw the resignation. The School Board, however, accepted the disputed resignation. The superintendent appealed the circuit court's affirmance of the School Board action to this court, and we affirmed as well. In doing so, we concluded that this fact situation fell within the purview of the Teacher Fair Dismissal Act. We said:

> We recognize that strict compliance is now the standard for determining if Appellant's resignation was proper according to the language found in section 6-17-1506. Under the facts as stated in this case, the District strictly complied with the Teacher Fair Dismissal Act when it voted to accept Appellant's resignation, which was effective upon delivery to Kelly.

*Higginbotham*, 332 Ark. at 568, 966 S.W.2d at 883. In effect, we treated a disputed resignation as a termination.

Now, a majority of this court has changed its mind and concludes that this disputed resignation in the Williams case does not fall under the aegis of the Teacher Fair Dismissal Act at all for purposes of the 75-day time limit for appeal, and we overrule

*Higginbotham* in part. I would adhere to precedent, which was well reasoned, and not depart from the *Higginbotham* rationale that a disputed resignation is governed by the Act.

Williams did not file his complaint until more than a year and a half after the School Board's action, when the Act calls for filing within 75 days. Now, according to the majority, disputed resignations, which a School Board has accepted, can be left hanging for five years, which is the statute of limitation for breach of contract. That kind of uncertainty is not what the Act contemplates. I would resolve this case by deciding that the disputed resignation is comparable to a termination under the Act and enforce the 75-day limit.

One final point. This decision today could well come back to haunt this court in a later case when it is to a teacher's advantage in a disputed-resignation case to be covered by the Teacher Fair Dismissal Act. As I read today's decision, that can no longer be the case.

I respectfully dissent.

THORTON, J., joins.

RAY THORNTON, Justice, dissenting. On the issue of whether the ATFDA applies to Mr. Williams's resignation, I respectfully dissent. Williams appeals the chancery court decision by claiming that his oral resignation is both within and outside the provisions of the ATFDA, and the majority agrees. Specifically, the majority holds that the ATFDA applies to acceptance of a proffered oral resignation but that the exclusive remedy clause within the ATFDA does not apply to resignations. It is the unequal application of the statute with which I disagree.

In my view the ATFDA must either (1) apply to both the submission of a resignation and the appeal from a ruling on such resignation, or (2) not be applicable to a submission of a resignation and therefore not applicable to an appeal from a ruling on such resignation. The statute is either applicable, or it is not. I am mystified that today's majority decision determines that ATFDA is both applicable and inapplicable to exactly the same circumstances.

If the ATFDA is not applicable to resignations, then an oral resignation is fully effective when it is tendered without any requirement of School Board action. *Teague v. Walnut Ridge Schs.*, 315 Ark. 424, 868 S.W.2d 56 (1993). If however, an oral resignation

triggers the application of the ATFDA, thereby giving Williams rights not otherwise available, Williams's appeal from School Board action must be controlled by the provisions of the ATFDA providing an exclusive statutory means for effecting such an appeal.

In my view, Williams cannot have it both ways. Either the ATFDA applies or it does not. I know of no legal principle that allows an individual to reap the benefits conferred by a statute without being bound by that statute's carefully expressed requirements.

I respectfully dissent.

I am authorized to state that Justice BROWN joins this dissent.