CITY OF MAUMELLE, Arkansas *v.*
JEFFREY SAND COMPANY and City of
North Little Rock, Arkansas

02-256 120 S.W.3d 55

Supreme Court of Arkansas
Opinion delivered June 19, 2003

[Petition for rehearing denied September 4, 2003.*]

* ARNOLD, C.J., not participating.

*Catlett, Yancey & Stodola*, by: *Mark Stodola, Christian C. Michaels*, and *Janan Arnold Davis*, for appellant.

*Friday, Eldredge & Clark*, by: *James M. Saxton* and *R. Christopher Lawson*, for appellee Jeffrey Sand Co.

*Paul Suskie*, City Att'y and *Andrea G. Woods*, Ass't City Att'y, for appellee, City of North Little Rock.

A NNABELLE CLINTON IMBER, Justice. In 2001, Jeffery Sand Company (JSC) sought to detach its property from the City of Maumelle and requested that the City of North Little Rock annex the property under the Detachment-Annexation Statutes, codified at Ark. Code Ann. § 14-40-2001 *et seq.* (Supp. 1999). Even though water and sewer services were available to the property, JSC asserts that because Maumelle did not provide them as municipal services, Maumelle failed to meet the requirements of the Detachment-Annexation Statutes. The circuit court agreed with JSC and upheld detachment of the property from Maumelle as well as a North Little Rock ordinance annexing the property. We disagree with the circuit court's interpretation of Ark. Code Ann. § 14-40-2001 *et seq.*, and reverse.

On February 7, 2001, JSC filed a statement requesting that Maumelle provide sewer and water services to its property located within the Maumelle city limits. Maumelle responded with a March 6, 2001, letter stating that it was committed to providing services to the property, and in fact the requested services were currently available to the property. On April 6, 2001, JSC replied stating that Maumelle's March 6 letter failed to commit to providing water and sewer services to the property as required by Ark. Code Ann. § 14-40-2002. As a result, JSC was detaching its property from Maumelle and would seek annexation by North Little Rock. In response to JSC, North Little Rock Mayor Pat-

rick Hays sent a letter to JSC's attorney on May 4, 2001, expressing his support of the proposed annexation and assuring JSC that North Little Rock could provide, and, in fact, was already providing the requested services to the property. Also on May 4, 2001, Maumelle filed an action seeking a declaratory judgment to the effect that Maumelle had substantially complied with the statutory requirements in section 14-40-2002.

On July 13, 2001, JSC moved for summary judgment contending that Maumelle's interpretation of the statute was wrong as a matter of law, and on August 10, 2001, Maumelle amended its complaint to add a request for an injunction prohibiting North Little Rock from annexing the property. At the end of a hearing held on the afternoon of August 13, 2001, the circuit court denied Maumelle's request for a temporary restraining order prohibiting North Little Rock from annexing the property on the condition that there would be no change in the use of the land until the court handed down a decision on the merits of the case. Later that same evening, the North Little Rock City Council unanimously adopted Ordinance No. 7389 annexing JSC's property. In response, Maumelle again amended its complaint on September 4, 2001, to request that the court declare Ordinance No. 7389 void. The circuit court conducted a hearing on JSC's summary-judgment motion on November 16, 2001, and took the issue under advisement.

A hearing on the merits of the case was then held on November 19, 2001, and the circuit court entered its findings of fact and conclusions of law on November 26, 2001. The court found that because Maumelle did not own the water and sewer services going to the property, Maumelle did not provide the services as required by the Detachment-Annexation Statutes. Therefore, the circuit court upheld (a) JSC's detachment of its property from Maumelle and (b) the validity of the North Little Rock ordinance annexing JSC's property.

On December 7, 2001, Maumelle moved that the judgment be amended to include thirty-one additional facts pursuant to Rule 52 of the Arkansas Rules of Civil Procedure. Maumelle filed a timely notice of appeal from the November 26 order on December 21, 2001, and then filed an amended notice of appeal on January 31, 2002, incorporating the deemed-denied posttrial motions.

For reversal, Maumelle contends that the circuit court erred in its interpretation of the Detachment-Annexation Statutes and in its ruling that the 2001 amendments to the statute did not apply. Maumelle further argues that even if the circuit court was correct in its interpretation of the statute, its ruling was clearly erroneous. To resolve these issues, we are called upon to interpret the Detachment-Annexation Statutes, Ark. Code Ann. § 14-40-2001 *et seq.*

## Standard of Review

■ ■ We review issues of statutory interpretation *de novo* because it is for this court to decide what a statute means. *Reding v. Wagner*, 350 Ark. 322, 86 S.W.3d 386 (2002). The purpose of statutory construction is to give effect to the intent of the General Assembly. *Williams v. Little Rock Sch. Dist.*, 347 Ark. 637, 66 S.W.3d 590 (2002). In doing so, we give the words of the statute their ordinary and usually accepted meaning in common language. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it is unnecessary to resort to the rules of statutory interpretation. *Id.*

## Statutory Interpretation

Maumelle's first point on appeal challenges the circuit court's interpretation of the Detachment-Annexation Statutes. In a two-pronged argument, Maumelle contends that the circuit court not only erred when it allowed JSC to detach from Maumelle where the requested services were already available to the property, but the court also erred when it declined to rule that the Detachment-Annexation Statutes only apply to a landowner requesting "new services."

■ In accordance with our standard of review, we first determine whether the language of the statute is clear and unambiguous and conveys a clear and definite meaning. The Detachment-Annexation Statutes provide, in relevant part, as follows:

**14-40-2002. Annexation into adjoining municipality.**

(a)(1) A landowner or group of landowners seeking *additional municipal services* may have their land detached from the municipality in which it is located and annexed into another municipality that borders the land.

(2) However, before annexation is allowed, the municipality in which the land is located shall have an opportunity to *provide* the services.

(b) The following procedure shall apply:

(1) The landowner or landowners shall file a statement with the municipality in which the land is located listing the municipal service or services being sought and stating that:

(A) The municipality is *not providing services necessary* to create improvements, provide employment or additional employment, subdivide, or otherwise maximize the use and value of the property;

(B) All the land in the request must compose one (1) area which is contiguous to another municipality;

(C) The services are *available* in another municipality that borders the land subject to the request; and

(D)(i) The municipality is requested to make a commitment to take substantial steps, within ninety (90) calendar days after the statement is filed, towards *making the services available* and within each thirty-day period thereafter to continue taking steps to demonstrate a consistent commitment to *provide the service* within a reasonable time, as determined by the kind of services requested.

(ii) The commitment must be made in writing to the landowner within thirty (30) calendar days, or the landowner may seek to have the land detached from the municipality and annexed into the other municipality.

(iii) The landowner must take appropriate steps to make the land accessible to the service and comply with reasonable requests of the municipality that are necessary for the service to be provided;

(2) The landowner or landowners may request the annexation of the land into the other municipality and thereby detach the land from the boundaries of the municipality in which the land is currently located, if:

(A) The municipality in which the land is located fails to execute a commitment to services within thirty (30) days after the statement is filed; or

(B) The municipality executes the commitment to services but fails to take the action required under subdivision (b)(1)(D) of this section;

(3)(A) The land shall be annexed into the other municipality if, after a request by the landowner or landowners, the governing body of the municipality into which annexation is sought signs a statement committing to *make the services available* and approves the request for annexation.

\* \* \*

(e) For the purposes of this section, "services" means electricity, water, sewer, fire protection, police protection, or any other offering by the municipality that materially affects a landowner's ability to develop, use, or expand the uses of the landowner's property.

Ark. Code Ann. § 14-40-2002 (Supp. 1999) (emphasis added).[1] Under this statute, the landowner seeking *additional municipal services* not *provided* by the municipality that are *necessary to create improvements,* etc., may request that the property be detached if a bordering municipality signs a statement committing to *make the services available* and the municipality in which the land is located does not make a commitment to take substantial steps towards *making the services available. Id.* In the instant case, JSC requested water and sewer services. To *provide* water and sewer services or to *make* those services *available* to a landowner within the city limits could reasonably be construed to mean that the city must own the utilities or that the city may participate in regional organizations that extend the services to the property. Similarly, the phrase *additional services* is susceptible to more than one interpretation. *Additional services* could mean services in addition to those currently available, or services in addition to those provided by the city. Although these terms and phrases may be open to more than one reasonable interpretation, they are not defined in the statute. As we recently explained, "[a] statute is ambiguous only where it is open to two or more constructions, or where it is of such

---

[1] Section 14-40-2002 was amended in 2001, but the changes were limited to subsections "b" and "e" and (1) expanded the time a city has to comply from 90 to 180 days, (2) removed the requirement of a written statement, (3) added "drainage and storm water management" to the list of services, and (4) made other minor stylistic changes. 2001 Ark. Acts 1525; History and Notes to Ark. Code Ann. § 14-40-2002 (Supp. 2001).

obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning." *Arkansas Dep't of Human Servs. v. Collier*, 351 Ark. 506, 518, 95 S.W.3d 772, 778 (2003). Because the statute is subject to two or more reasonable constructions, we hold that section 14-40-2002 of the Detachment-Annexation Statutes is ambiguous.

▆▆▆▆ Where a statute is ambiguous, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Mississippi River Transmission Corp. v. Weiss*, 347 Ark. 543, 65 S.W.3d 867 (2002). We may also look to the emergency clause to determine legislative intent. *Quinney v. Pittman*, 320 Ark. 177, 895 S.W.2d 538 (1995). Maumelle first directs our attention to the purpose section of the Detachment-Annexation Statutes that provides:

**14-40-2001. Purpose.**

> It is the purpose of this subchapter to assist landowners to obtain municipal services by *making the services reasonably available*. However, nothing in this subchapter shall relieve a landowner from the obligation to pay regular fees and costs for connecting to services or from the obligation to pay the regular cost of the services.

Ark. Code Ann. § 14-40-2001 (Supp. 1999) (emphasis added). The purpose and objective of the statute is to provide a mechanism by which a landowner may obtain services. The emergency clause of Act 779 of 1999 identified aggrieved landowners as those currently being "inadequately served by the municipality in which [the lands are] located where the needed services exist *in* a bordering municipality." 1999 Ark. Acts 779, § 6 (emergency clause) (emphasis added). This language indicates that the remedy the legislature sought to provide was to give the landowner a means of obtaining services to the property. In the instant case, it is undisputed that sewer and water services were provided and available to JSC's property. Thus, the general intent of the legislature was already met, in that the services requested by JSC were available to the property. However, our analysis does not end there.

▆▆▆▆ The circuit court found that "Maumelle does not have a municipal water or sewer system and cannot provide water and

sewer services to the subject property." The question then becomes what must a municipality do to *provide* or *make services available* to its citizens. Is a city required to own the utilities or have a controlling interest in the organization that supplies the services in order to *provide* or *make the services available*, or is a city merely required to make it possible for its citizens to obtain the necessary services? As indicated by the General Assembly in its enactment of laws pertaining to improvement districts and regional distribution systems, the solution is to make services, such as water and sewer services, available through regional organizations or by authorizing the formation of utility improvement districts.[2] If municipal ownership or control of water and sewer facilities is a prerequisite to a city *making those services available* to property within its city limits, many, if not most, municipalities in Arkansas would fail to *provide* the services. We think it is clear that the legislature, by the enactment of the Detachment-Annexation Statutes, did not intend to eliminate regional organizations or improvement districts as the means by which a municipality could provide services to its citizens. We must conclude, therefore, that the circuit court erred in its interpretation of Ark. Code Ann. § 14-40-2001 *et seq.*, when it ruled that Maumelle did not provide water and sewer services to its citizens because the city did not own a water or sewer system.

### Sewer Service

 JSC's property is served by a sewer line that runs to the property, and a manhole is located on the property line. The

---

[2] The creation of regional water systems to replace independently owned municipal water systems has been authorized and encouraged by the General Assembly through the Regional Water Distribution District Act, Ark. Code Ann. § 14-116-101 *et seq.* (Repl. 1998, Supp. 2001), and the Interlocal Cooperation Act, Ark. Code Ann. § 25-20-101 *et seq.* (Repl. 1998, Supp. 2001). The General Assembly has also authorized and encouraged the development of improvement districts to provide nearly all forms of local services. *See generally*, Ark. Code Ann., Title 14, Local Government, Subtitle 5, *Improvement Districts Generally*, chs. 86-95; Subtitle 7, *Water & Soil Improvement Districts*, chs. 114-125; Subtitle 11, *Economic Development Improvement Districts, Facilities, & Authorities*, chs. 183-188; Subtitle 13, *Public Utility Improvement Districts*, chs. 216-219; Subtitle 15, *Solid Waste Disposal, Waterworks, & Sewer Improvement Districts*, chs. 248-251; Subtitle 17, *Public Health & Welfare Improvement Districts*, chs. 281-286; Subtitle 19, *Roadways, Bridges, & Parking Improvement Districts*, chs. 315-322. (Repl. 1998, Supp. 2001).

sewer line was constructed by the Crystal Hill Property Owners Improvement District No. 1, which was formed in 1993 to construct sewer lines in Maumelle and North Little Rock. The creation of the improvement district was authorized by Maumelle City Ordinance No. 223 on November 1, 1993. JSC's property is located within that improvement district. In May 1994, the North Little Rock Waste Water Utility (NLRWWU) authorized the extension of services to the Crystal Hill Improvement District and to the Maumelle Boulevard Water and Sewer Improvement District No. 1. Because the Arkansas Highway Department requires that sewer lines in its right-of-way be dedicated to a municipality, ownership of the sewer lines was vested in NLRWWU. The pumping stations and sewage treatment facilities are also owned by NLRWWU. JSC's property is nonetheless still subject to a special tax payable to the improvement district. By virtue of Maumelle's authorization of the creation of the sewer improvement district in 1993, and because JSC's property is actually served by a sewer line that runs to the property, we conclude that Maumelle makes sewer services available to JSC's property, even though the actual waste water processing facilities and sewer lines are owned by NLRWWU.

*Water Service*

A water line runs to JSC's property. The water is supplied by Central Arkansas Water, Inc. (CAW). CAW is not owned by any city. Instead, CAW was created in July 2001 by the merger of the North Little Rock Water Commission and the Water Department of Little Rock. CAW provides water service to a number of cities in Pulaski and Saline Counties and makes water services available to unincorporated areas of Pulaski County. CAW also provides water to JSC's property and to other properties within the Maumelle municipal boundaries. The interpretation of the Detachment-Annexation Statutes as posited by JSC and North Little Rock would require Maumelle to create an independent and redundant water system — one that is unnecessary to make water available to any of its citizens. The sole purpose of such a water system would be to keep city landowners whose property adjoins North Little Rock or other cities from requesting that their properties be annexed by the adjoining city. We will not interpret a statute to yield such absurd results that are contrary to

legislative intent. *Turnbough v. Mammoth Spring Sch. Dist. No. 2*, 349 Ark. 341, 78 S.W.3d 89 (2002).

The circuit court upheld the detachment of JSC's property from Maumelle and the property's annexation by North Little Rock. In doing so, the circuit court incorrectly interpreted the Detachment-Annexation Statutes, Ark. Code Ann. § 14-40-2001 *et seq*. Accordingly, we reverse the circuit court's November 26, 2001 order and remand for further action consistent with this opinion. In view of our reversal on the issue of statutory interpretation, we do not address the other points raised by Maumelle.

Reversed and remanded.

SPECIAL JUSTICE J. ERIC HAGLER joins in this opinion.

ARNOLD, C.J., and CORBIN, J., not participating.