2013 Ark. App. 331

**Odell POLLARD, P.A. and Odell Pollard, Individually, Appellants**

v.

**SEECO, INC., and DeSoto Drilling, Inc., Appellees.**

No. CA 12–1026.

Court of Appeals of Arkansas.

May 15, 2013.

Lightle, Raney, Streit & Streit, LLP, by: Donald P. Raney and Jonathan R. Streit, for appellants.

Daily & Woods, P.L.L.C., by: Jerry L. Canfield and Colby T. Roe, for appellees.

WAYMOND M. BROWN, Judge.

Appellants Odell Pollard, P.A. and Odell Pollard, individually, appeal an order of the White County Circuit Court granting summary judgment in favor of appellees and dismissing appellants' complaint with prejudice. On appeal, appellants argue that summary judgment was erroneously granted because genuine issues of material fact existed regarding the damages to appellants' property on account of the drill pad constructed by appellees. We affirm.

Appellants are the owners of approximately 320 acres of real property adjoining the Little Red River situated in both White and Cleburne Counties, Arkansas. Odell Pollard, P.A., executed an oil and gas lease [1] in favor of Mid–Continent Title and

---

1. The oil and gas lease gave Mid–Continent the exclusive right to the property for the   purpose of:

Leasing Consultants, Inc., on December 22, 2004, covering a twenty-five-acre tract of properly near Pangburn, Arkansas. The lease was subsequently assigned to appellees. The parties entered into a surface-usage agreement in September 2009.[2] Appellees extended the lease in December 2009.

Appellees constructed the drill pad as contemplated by the lease and surface-usage agreement. The well produced gas for first sales on April 9, 2010. Appellants filed a complaint on March 18, 2011, alleging among other things, that appellees placed a drill pad on a tract of real property that "was a part of the future expansion plans for the existing river residential development activity which had already been commenced by [appellants] and that placing a gas well drill site on that property would greatly reduce its value for such residential development if not totally destroy said property for future residential development purposes." According to the complaint, the surface-usage agreement was entered into when appellees declined appellants' request to place the drill site on another tract of property owned by appellants. The complaint further alleged that

> prospecting, exploring by geophysical and other methods, drilling, mining, operating for and producing oil or gas, or both, ... together with the right to construct and maintain pipe lines, ... equipment and structures thereon to produce, save and take care of said oil and gas, and the exclusive right to inject air, gas, water, ... and other fluids from any source into the subsurface ... and any and all rights and privileges necessary, incident to, or convenient for the economical operation of said land, alone or conjointly with neighboring land, for the production, saving and taking care of oil and gas and the injection of ... fluids[.]

2. The agreement stated in pertinent part:

> This agreement is entered into by the parties for the sole and exclusive purpose of reciting their agreement regarding the provisions, conditions and details of the surface work to be conducted by SEECO in furtherance of the construction, operation and maintenance of a drill pad and connecting roadway located on the surface of real property owned by Odell Pollard. At the time of the execution of this document the parties have not reached an agreement regarding the monetary amount of any surface damages related to these surface activities. Accordingly, any issues related to compensation for any surface damages associated with SEECO's surface activities are specifically excluded, reserved and withheld from this agreement. Notwithstanding their execution of this Agreement, both parties specifically reserve any and all

> legal rights they may now have, or which may accrue, with respect to issues of compensation for surface damages on the subject property caused by surface activities and operations of SEECO.
>
> Without limiting the foregoing or SEECO's rights under the above-mentioned oil and gas lease, Owner agrees and acknowledges that SEECO shall have the right to construct, install, use, maintain, remove, replace, repair and operate an access road, a drill pad (said drill pad to be constructed within a clearing area being 500' × 550' in size and occupying approximately 6.313 acres), pipelines, tanks, ... and such other improvements and structures on the Subject Land, and to use, maintain, repair and operate thereon temporary surface fuel and water lines, wellhead separators, ... and such other facilities, equipment, fixtures, supplies and materials, as may be required or desirable for the Well Operations. To the extent reasonably necessary or desirable for the maintenance, use and operation of such improvements, structures, facilities, equipment, fixtures, supplies, and materials[.]
>
> ....
>
> 4. nothing in this release shall be interpreted or construed to restrict or prohibit the landowner from pursuing any legal rights he may have with respect to any damages to the Subject Land[.] ~~that are determined by a court of competent jurisdiction to be attributable to SEECO's negligence in conducting Well Operations.~~ (This language was struck-out by Pollard before he signed the agreement.)

appellees set up the drill site in such a manner that, instead of the 6.313 acres it was supposed to take up, it used or rendered useless 25.19 acres. Appellants sought compensation for the diminished value of the land due to appellees' action. Appellants also contended that appellees allowed "drilling fluids and other contaminants to run off the drilling pad site damaging the gas well drilling site and the surrounding property . . . in breach of the aforesaid surface-usage agreement and Arkansas law." Appellees filed an answer on April 5, 2011, denying the material allegations in appellants' complaint.

Appellees filed a motion for summary judgment on February 7, 2012, on the basis that appellants' allegations were not supported by fact or law. Exhibits to the motion included, but were not limited to, the following: a copy of the oil and gas lease, the extension of the oil and gas lease, the surface-usage agreement, and the affidavit of Clifton Gregory. Gregory's affidavit stated that the drill pad in question was constructed in conformance with industry practices and that it was a normal and reasonable size. He denied any spill or run-off from the drill site of drilling fluids or any other fluids that could create an environmental or contamination problem. According to Gregory, the location of the drill pad was the best location for it based on a number of factors, including geological concerns regarding potential faulting and appellees' desire to run additional wells from the same drilling pad in a future drilling phase.

Appellants filed a response to appellees' motion on March 16, 2012, contending that factual questions existed under the surface-usage agreement due to appellees' failure to reasonably accommodate appellants' request "as to the location of the drilling site and therefore unreasonably damaged the property value of the [appel-lants'] real property by destroying the tract for future residential development purposes which [appellants] had made known to the [appellees] through its agent landman." Appellants attached Odell Pollard's affidavit, stating that he witnessed water running off of the drilling pad onto the property to the north of the pad in the summer of 2009, that it was so much water that his truck became stuck, and that there had been no rain at the time of the incident. He also stated that he pursued the surface-usage agreement when appellees declined his request to place the drill pad on a different piece of property so as to not interfere with his development plans for the twenty-five-acre tract covered by the oil and gas lease. He concluded by stating that the property had been greatly damaged by the fact that "SEECO would not accommodate [him] by relocating the well site . . . and then subsequently positioning the well site and drilling pad on [his] 25 acres in a manner which damaged [his] remaining property for future residential development activity for which [he is] seeking damages as authorized by Arkansas law and the Surface Usage Agreement."

Appellees filed a response on April 3, 2012, contending that Pollard's affidavit was based on "allegations and conclusions, which are not sufficient to overcome [appellees'] prima facie showing of entitlement to judgment as a matter of law." Appellees denied that the surface-usage agreement entered into by the parties created a factual issue. Appellants filed a supplemental affidavit of Pollard on August 2, 2012, reiterating Pollard's contentions that appellees failed to reasonably accommodate appellants' request. Appellees filed a response on August 10, 2012, relying on Pollard's deposition testimony that he had "no experience with natural-gas development and no experience with reference to the size and layout of pad

sites for drilling natural gas wells" to support its position that summary judgment should be granted. Appellees included a supplemental affidavit of Gregory, which stated that appellants' suggested location for the drill pad would have encompassed Pollard's front yard and driveway.

The trial court granted appellees' motion for summary judgment in an order filed August 17, 2012, stating in pertinent part,

> After consideration of all matters of record and the presentation of the parties' positions ... the Court finds that Defendants' Motion for Summary Judgment should be granted on the basis that there are no genuine issues of material fact which would create a triable issue with reference to Plaintiffs' position that Defendants failed to reasonably accommodate the Plaintiffs by not placing the subject natural gas well site at the subject location on Plaintiffs' property. The Court finds the Plaintiffs failed to meet with proof the proof presented by the Defendants that the subject natural gas well site was reasonabl[y] located and constructed in conformance with Defendants' rights under the oil and gas lease granted by the Plaintiffs with reference to the subject real property.

Appellants timely filed a notice of appeal on September 11, 2012. On appeal, appellants argue that summary judgment was inappropriate because genuine issues of material fact remain regarding the surface damage caused by appellees by the construction of the drill pad.

Summary judgment should be granted only when there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law.[3] Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.[4] On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered.[5] We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party.[6] Our review considers the pleadings and also the affidavits and documents filed by the parties.[7]

Appellants give three reasons why summary judgment was inappropriate: (1) because appellees failed to offer proof on the controverted issue of diminution of value, (2) because appellants' expert witnesses and testimony regarding diminution of value disclosed through answers to interrogatories present genuine issues of material fact, and (3) because Pollard's affidavits and deposition testimony regarding physical damage present genuine issues of material fact.

Appellees argue, and we agree, that appellants' arguments do not address the substantive point of law at issue. It is undisputed that the oil and gas lease gave appellees the right to use the property in question for its gas exploration and production operations and that the lease also permitted appellees to select the construction site for the drill pad. Controversy arose when appellees declined appellants' requests to construct the drill pad in an-

---

3. *See Searcy Cnty. Counsel for Ethical Gov't v. Hinchey*, 2013 Ark. 84, at 5, 2013 WL 781099.

4. *See id.*

5. *See id.*

6. *See id.*

7. *See id.*

other location. Generally, as against the surface owner, the owner of mineral rights has a right to go upon the surface to drill wells to his underlying estate and to occupy so much of the surface beyond the limits of his well that may be necessary to operate his estate and remove the product.[8] An injury to the surface of the land by the owner of minerals may be said to be the result of the commission of a wrong when the use of the surface is unreasonable.[9] An injury necessarily inflicted in the exercise of a lawful right does not create a liability, and a lessee will only be liable to the surface owner for damages when the lessee's use of the surface is unreasonable.[10] Here, appellees established that their use of the surface was reasonable, preventing any recovery at law for injury under the oil and gas lease. However, appellants argue that the surface-usage agreement created protection for their claim for damages for the diminution of value. A close look at the agreement fails to reveal any such "protection." Although the agreement mentions compensation for surface damage, it does not mention under what circumstances compensation for damages would be paid to appellants. The agreement does not seem to confer any more rights to appellants than they had under the oil and gas lease and at law. It was appellants' burden to bring forth proof of this additional protection to defeat appellees' motion for summary judgment. Appellants failed to meet their burden; therefore, summary judgment on the issue of diminution of value was appropriate. We do not address appellants' second subpoint because we have already determined that appellants failed to meet their burden of proving that they had a cause of action for diminution of value.

Appellants also contend that summary judgment was inappropriate because Pollard's affidavits and deposition created genuine issues of material fact regarding physical damage. Pollard stated that in the summer of 2009, his truck became stuck in run-off water from the drill pad. He further contended that the fluids were contaminating his property. However, Pollard admitted that he did not have any experience with natural-gas development, that he had not hired an expert to take samples of the fluids, and that he did not have anyone to testify about what the specific contaminants were. Appellees introduced the affidavit of Gregory, which essentially denied all of Pollard's allegations. A mere suspicion in the mind of the party against whom summary judgment is asserted will not create a genuine issue of fact.[11] Accordingly, we affirm the trial court's decision to grant summary judgment.

Affirmed.

GLADWIN, C.J., and HIXSON, J., agree.

8. *Diamond Shamrock Corp. v. Phillips*, 256 Ark. 886, 511 S.W.2d 160 (1974).

9. *Id.*

10. *Id.*

11. *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999).